### TRANSAMERICAN FREIGHT LINES, INC., v. QUIMBY.

#### OPINION OF THE COURT.

1. WORKMEN'S COMPENSATION — THIRD-PARTY TORT-FEASOR — EMPLOYER'S SUBROGATION RIGHT.

    Amendment to the workmen's compensation act which abolished the election of remedies formerly provided and made it possible for the employee who was injured both to receive compensation payments and sue the third party causing his injury also provided for reimbursement to the employer out of any recovery by the employee (CLS 1961, § 413.15).

2. STATUTES—CONSTRUCTION—"SHALL".

    Courts should give to the mandatory word "shall" its ordinary and accepted meaning, when construing a statute, unless to do so would frustrate the legislative intent.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4]  58 Am Jur, Workmen's Compensation § 366.
[2]  50 Am Jur, Statutes §§ 223, 224, 238.
[3]  50 Am Jur, Statutes §§ 358, 363.
[5]  41 Am Jur, Pleading §§ 340–343.
[6]  20 Am Jur 2d, Costs §§ 15, 16.
[7]  5 Am Jur 2d, Appeal and Error § 967.
[8]  27 Am Jur 2d, Equity §§ 3, 57.
[9]  27 Am Jur 2d, Equity §§ 10, 87, 88, 102, 109.
[10–12]  58 Am Jur, Workmen's Compensation § 366.
[13]  54 Am Jur, Trusts § 218.
[14]  54 Am Jur, Trusts § 218.
  58 Am Jur, Workmen's Compensation § 366.
[15]  58 Am Jur, Workmen's Compensation §§ 60, 62, 63, 66.

3. SAME—CONSTRUCTION.

The Supreme. Court must construe a legislative enactment in its entirety, and one provision may not be construed in such a manner as to render another of no effect if this result can be avoided.

4. WORKMEN'S COMPENSATION—THIRD-PARTY ACTION—DAMAGES—SUBROGATION OF EMPLOYER.

Section of workmen's compensation act which provides for a third-party action by an injured employee against a third-party tort-feasor who has caused his injury and also provides that any recovery for damages resulting from personal injury or death, after deduction of expenses for recovery, shall first reimburse the employer or its workmen's compensation insurance carrier *held*, to give the employer or its compensation insurer a right to subrogation out of a settlement made between the injured employee and the third-party tort-feasor before judgment, even though employer or its insurer had not intervened in defendant's. action against the third-party tort-feasor and had not started its own action as provided by statute, the statute of limitations had run against the employer at the time of settlement, and the settlement agreement provided that any claims of the employer were not included in the settlement (CLS 1961, § 413.15).

5. JUDGMENT—SUMMARY JUDGMENT—ISSUE OF FACT.

Granting of summary judgment in favor of plaintiff employer against defendant attorney for workmen's compensation claimant, in action by employer against claimant and his attorney for reimbursement of amounts paid to claimant as workmen's compensation out of proceeds of settlement of claimant's action against third-party tort-feasor, was error where the complaint alleged a promise that defendants would hold and secure any judgment that might be recovered against third-party tort-feasor for the joint benefit of employer and defendants and until the total rights of employer and defendants to the judgment could be determined, a promise that no settlement negotiations would be completed without knowledge and consent of the employer and without the rights of employer and defendants to any settlement having first been determined, and a further promise by defendants that employer would be kept advised of progress of settlement negotiations, where defendants by their answer denied that there were any agreements of any kind, because the pleadings disclosed that an issue of fact existed, and the issue was not resolved by anything in the agreed statement of facts made by the parties (CLS 1961, § 413.15).

6. COSTS—NEITHER PARTY PREVAILING IN FULL.

No costs are allowed in employer's action against its injured employee and his attorney to recover workmen's compensation benefits paid claimant from the proceeds of a settlement made by claimant with third-party tort-feasor before judgment, where neither party prevails in full (CLS 1961, § 413.15).

SEPARATE OPINION.

BLACK, J.

7. APPEAL AND ERROR—CHANCERY CASES—RECORD.

*Suits at chancery should be so tried in the lower court that when appealed, the Supreme Court may finally dispose of the issue raised by the pleadings.*

8. EQUITY—JURY.

*The right to have equity controversies dealt with by equitable methods is as sacred as the right of trial by jury.*

9. SAME—COMMON LAW.

*Rules of equity shall prevail where there is a conflict between the rules of equity and the rules of the common law with reference to the same matter.*

10. WORKMEN'S COMPENSATION—REMEDIES OF EMPLOYEE—ELECTION OF REMEDIES—EMPLOYER'S SUBROGATION RIGHT.

*Amendment to workmen's compensation act was designed to eliminate the irreversible choice by an injured employee between remedies under workmen's compensation act and remedies against third-party tort-feasors and to provide reimbursement for employer, on account of workmen's compensation benefits paid, out of any recovery by employee from third party (CLS 1961, § 413.15).*

11. SAME—REIMBURSEMENT OF EMPLOYER OR ITS INSURER—ANY.

*Adjective any, as used in provision of workmen's compensation act that "any recovery against the third party for damages * * * shall first reimburse the employer or its workmen's compensation insurance carrier," is all-inclusive and denotes "all", "of every kind", and "each one of all" (CL 1948, § 413.15, as amended by PA 1952, No 155).*

12. SAME—COMPROMISE AND SETTLEMENT—EMPLOYER'S SUBROGATION RIGHT.

*Actions of injured employee and his attorney in negotiating a settlement of the employee's claims against third-party tort-feasor without notice to employer of intention to settle, when fair dealing required such a notice, gave rise to constructive trust by employee and attorney of funds so obtained for bene-*

fit of employer's right to reimbursement, and absence of express agreement is no defense to declaration of such a constructive trust (CLS 1961, § 413.15).

13. EQUITY—CONSTRUCTIVE TRUST—PROMISE.

A constructive trust is not a trust at all, but a remedial device used by equity when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, and the making of a promise by the constructive trustee is neither required nor relevant to the establishment of the trust.

14. WORKMEN'S COMPENSATION—EMPLOYER'S REIMBURSEMENT—ATTORNEY—CONSTRUCTIVE TRUST.

Attorney for workmen's compensation claimant, who participated in settlement of action against third-party tort-feasor in such a way as to become a constructive trustee of the proceeds of the settlement for reimbursement of the employer's compensation payments to claimant, should be held liable to account for proceeds after hearing to determine proper payment to him for expenses of recovery (CL 1948, § 413.15, as amended by PA 1952, No 155).

DISSENTING OPINION.

O'HARA, J.

15. WORKMEN'S COMPENSATION—EMPLOYER'S RIGHT TO REIMBURSEMENT—NOTICE OF ACTION AGAINST THE THIRD PARTY.

Provision in amendment to workmen's compensation act allowing employee to bring action against third-party tort-feasor after receiving workmen's compensation benefits was designed to provide a separate fund for recovery by the employee, and requirement of notice to employer when employee begins action against third-party tort-feasor was designed to cut off employer's right to reimbursement out of recovery against third party if employer failed to join in action (CL 1948, § 413.15, as amended by PA 1952, No 155).

Appeal from Court of Appeals, Division 3, Burns, P. J., Fitzgerald and Watts, JJ., reversing Ottawa, Smith (Raymond L.), J.   Submitted November 7, 1967.   (Calendar No. 19, Docket No. 51,655.)   Decided September 25, 1968.

5 Mich App 174, reversed.

Complaint by Transamerican Freight Lines, Inc., a Delaware corporation, against Clayton L. Quimby and George L. McCargar, Jr., for reimbursement from funds received by defendant Quimby in settlement of a personal injury claim. Judgment for plaintiff. Defendants appeal. Reversed by Court of Appeals. Plaintiff appeals to Supreme Court. Reversed and remanded for entry of order conforming to the opinion.

*Bergstrom, Slykhouse & Shaw (Richard M. Van Orden,* of counsel), for plaintiff.

*Scholten & Fant,* for defendants.

KELLY, J. Defendant Quimby's claim against the third-party tort-feasor was settled before judgment. The settlement agreement provided that any claims of plaintiff-employer were not included in the settlement.

Plaintiff had not intervened in defendant's action against the third-party tort-feasor nor had it started its own action as provided by statute, and the statute of limitations had run against plaintiff at the time of settlement.

Plaintiff commenced action to recover the moneys *plaintiff had paid defendant* under the workmen's compensation law prior to defendant's settlement with the third-party tort-feasor and joined defendant Quimby's attorney, George L. McCargar, Jr., as a party defendant.

Defendants' answer denied "that plaintiff is entitled to any judgment against these defendants or either of them in any sum of money whatsoever."

The trial court granted plaintiff's motion for summary judgment against both defendants.

The Court of Appeals (5 Mich App 174, 180) reversed the trial court by holding that plaintiff "is not entitled to be reimbursed" and stated:

"The question of the attorney's personal liability in turning over the amounts recovered to his client without reimbursing the employer need not be considered in light of the above decision which does not recognize any right of the employer to the settlement made by its employee in this case."

The question presented calls for determination of legislative intent as expressed in CLS 1961, § 413-.15 (Stat Ann 1960 Rev § 17.189), the pertinent part being the first 6 paragraphs as follows:

"Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than a natural person in the same employ or the employer to pay damages in respect thereof, the acceptance of compensation benefits or the taking of proceedings to enforce compensation payments shall not act as an election of remedies, but such injured employee or his dependents or their personal representative may also proceed to enforce the liability of such third party for damages in accordance with the provisions of this section. If the injured employee or his dependents or personal representative does not commence such action within 1 year after the occurrence of the personal injury, then the employer or its compensation insurance carrier may, within the period of time for the commencement of actions prescribed by statute, enforce the liability of such other person in the name of that person. Not less than 30 days before the commencement of suit by any party under this section, such party shall notify, by registered mail at their last known address, the workmen's compensation commission, the injured employee, or in the event of his death, his known dependents, or personal representative or his known next of kin, his employer and the work-

men's compensation insurance carrier. Any party in interest shall have a right to join in said suit.

"Prior to the entry of judgment, either the employer or his insurance carrier or the employee or his personal representative may settle their claims as their interest shall appear and may execute releases therefor.

"Such settlement and release by the employee shall not be a bar to action by the employer or its compensation insurance carrier to proceed against said third party for any interest or claim it might have.

"In the event the injured employee or his dependents or personal representative shall settle their claim for injury or death, or commence proceeding thereon against the third party before the payment of workmen's compensation, such recovery or commencement of proceedings shall not act as an election of remedies and any moneys so recovered shall be applied as herein provided.

"In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee or his dependents or personal representative would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or its workmen's compensation insurance carrier for any amounts paid or payable under the workmen's compensation act to date of recovery, and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payment of compensation benefits.

"Expenses of recovery shall be the reasonable expenditures, including attorney fees, incurred in effecting such recovery. Attorney fees, unless otherwise agreed upon, shall be divided among the attorneys for the plaintiff as directed by the court. The expenses of recovery above mentioned shall be

apportioned by the court between the parties as their interests appear at the time of said recovery."

Construing this statute, the trial court in its opinions stated:

"The workmen's compensation law, taken as a whole, would seem to recognize the right of the compensation insurance carrier to participate in any recovery by the employee from a third-party tort-feasor.  *  *  *

"This statute expressly provides that any 'recovery' for 'personal injuries or death only' shall 'first reimburse the employer or its workmen's compensation insurance carrier for any amounts paid or payable' *after deduction of expenses of recovery.* Any settlement for any items of damage for personal injuries would be expressly covered by this act. And this would be true whether or not the employer or its insurance carrier were parties to the suit.

"The fact that the employer may have secured releases from the third-party tort-feasor does not in any way alter the position of the employer in respect to his rights under the act. Defendants have omitted this claim from their brief and the court considers it abandoned."

In contrast to the trial court, we quote the following from the opinion of the Court of Appeals:

"The employer contends that the act requires reimbursement to be made from 'any recovery against the third party for damages resulting from personal injuries.'  *  *  *

"The interpretation given to the statute by the appellee in the instant case would nullify the section providing for separate settlements and releases of employer or employee claims or interests.  *  *  *

"Transamerican Freight Lines, Inc., is not entitled to be reimbursed for the sums paid out of an agree-

ment which was a settlement of its employee's *individual claims* against a third party and which specifically excludes claims of Transamerican. This settlement and release does not bar an action by the employer or its insurance carrier to recover amounts paid under the workmen's compensation act from the third party."

From the first workmen's compensation legislation in Michigan this Court has recognized the employer-insurer's right to reimbursement as a form of statutory subrogation.

Prior to 1952, when the amendment to part 3, § 15, with which this Court is here concerned, was enacted, the statute provided that:

"Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages, or against the employer for compensation under this act, but not against both, and if compensation be paid under this act the employer may enforce for his benefit or for that of the insurance company carrying such risk, or the commissioner of insurance, as the case may be, the liability of such other person."

This Court in *Michigan Employers Casualty Co.* v. *Doucette* (1922), 218 Mich 363, 365, considered the above quoted statutory language, and defining the employer's right to recovery said:

"No assignment is necessary. The statute confers the right by way of subrogation."

This decision of employer's rights was subsequently approved in *Utley* v. *Taylor & Gaskin, Inc.* (1943), 305 Mich 561, 575 and *Bay State Milling Co.* v. *Izak* (1945), 310 Mich 601, 604.

The 1952 amendment of part 3, § 15, among other things, provides for the deduction of reasonable expenses of recovery *before* the employer-insurer's right to reimbursement from the employee. See our 1954 decision in *Rookledge* v. *Garwood,* 340 Mich 444, holding the employer-insurer's right to reimbursement without discussion of attorney fees as an expense of recovery, and where this Court said (p 458):

" 'The former statute required an employee to elect whether to pursue his remedy against the employer for compensation or to seek his common-law remedy against the third party causing the injury. Under the present statute the employee may receive compensation or take proceedings to enforce compensation payments and also sue the third party. The statute provides in substance, that in *case of recovery against the third party, after deducting expenses of recovery,* the amount of the judgment is to be used first to reimburse the employer or the workmen's compensation insurance carrier for amounts paid or payable under the compensation act to date of recovery and the balance is paid to the insured employee or his dependents. This statute pertains to the remedy and hence applies to the present action. *Judd* v. *Judd,* 125 Mich 228; *Heineman* v. *Schloss,* 83 Mich 153; *Nash* v. *Robinson,* 226 Mich 146; *Detroit Club* v. *State of Michigan,* 309 Mich 721; *Stott* v. *Stott Realty Company,* 288 Mich 35. Since the change in the statute created no new cause of action and the amendment merely limited a procedural defense, the amended statute governs this controversy.' " (Emphasis ours.)

In construing legislative intent, we keep in mind our holding in regard to the mandatory word "shall"[1]

---

[1] *Smith* v. *School District No. 6, Fractional, Amber Township* (1928), 241 Mich 366; *Village of Durand* v. *Board of Supervisors of Shiawassee County* (1903), 132 Mich 448.

and construe the act and its amendments as a whole, thus avoiding if possible construction of one provision in such a manner as to render another of no effect.[2]

We do not agree with the Court of Appeals' conclusion that to hold that the act requires reimbursement to be made from " 'any recovery against the third party for damages resulting from personal injuries' " would "nullify the section providing for separate settlements and releases of employer or employee's claims or interests."

We quote with approval the following from plaintiff-appellant's brief:

"The crux of plaintiff's dispute with the defendants and with the Court of Appeals—the jugular issue—lies not in the proposition that an employee or an employer-insurer may each settle and release a third party as 'their interests shall appear', but, rather, in what constitutes the 'interest' that each may settle without affecting the interests of the other."

Paragraphs 1 and 5 of the statute above quoted establish the right to bring an action, the recovery and reimbursement. Paragraph 1 provides that both employer and employee may become party plaintiff, and paragraph 5 states that the action may be brought to recover any damages "for which the employee or his dependents or personal representatives will be entitled to recover in an action for tort" and that "any recovery" for damages resulting "from personal injury or death only, *after deduction of expenses for recovery, shall* first reimburse the employer or its workmen's compensation insurance carrier." (Emphasis ours.)

---

[2] *Joslin* v. *Campbell, Wyant & Cannon Foundry Co.* (1960), 359 Mich 420; *Taylor* v. *State* (1960), 360 Mich 146.

Paragraphs 2, 3 and 4 provide for settlement. Paragraph 2 provides that both employer and employee have the right to settle before judgment. Paragraph 3 provides the employee's release shall not be a bar to any action by the employer insurer, and paragraph 4 makes it plain that if the employee settles his claim "for injury or death" then *any moneys so recovered*" after deduction of expenses of recovery including attorney fees must be first applied to reimbursement of the employer-insurer.

The statutory provision allows no alternative other than approving the trial court's order granting summary judgment in favor of plaintiff against defendant Clayton L. Quimby.

There remains the question: Should defendant Quimby's attorney, George L. McCargar, Jr., be held liable?

Plaintiff's complaint alleged that on or about October, 1960, defendant Quimby commenced the action in the circuit court for the county of Jackson; that defendants Quimby and McCargar, having knowledge that plaintiff intended to intervene, requested plaintiff not to do so, promising that if plaintiff would so agree "that defendant Clayton L. Quimby and defendant George L. McCargar would hold and secure any judgment that might be recovered against third-party tort-feasor for the joint benefit of plaintiff and defendants and until the total respective rights of plaintiff and defendants thereto could be ascertained, determined or settled; that defendant Clayton L. Quimby and defendant George L. McCargar did further promise and agree in exchange for said considerations by plaintiff that no settlement negotiations would be completed or accomplished without the knowledge and consent of plaintiff and without the respective rights of plain-

tiff and defendants in and to any settlement sum
having first been determined and settled, and de-
fendants further promised that plaintiff would be
currently and constantly kept advised and informed
of the progress of all settlement negotiations as
and when they occurred." Relying on said promises,
plaintiff did not intervene, and on December 20,
1963, defendants accomplished the settlement and
dismissal of the suit. Plaintiff had no knowledge
of such action until January 18, 1964.

Defendants' answer denied "that there are any
representations or agreements of any type or kind
whatsoever on which the plaintiff could rely for
the reason that such promises, agreements or repre-
sentations did not exist and further defendants deny
that plaintiff refrained from attempting to inter-
vene in said law suit because of any such agreements
or promises."

Defendant George L. McCargar filed a motion for
summary judgment.

January 6, 1965, the trial court filed an opinion
disposing of defendant McCargar's motion holding:

"The workmen's compensation law, taken as a
whole, would seem to recognize the right of the
compensation insurance carrier to participate in any
recovery by the employee from a third party tort-
feasor.   *   *   *

"Was there a contract between plaintiff and Mc-
Cargar that the latter hold the funds until divided?
This is a fact question, and the answer will depend
upon the proofs. This issue cannot be determined
on a summary motion.   *   *   *

"The court is of the opinion that the motion for
summary judgment should be denied."

Plaintiff filed its motion for summary judgment
and defendants answered denying plaintiff's con-
tention that there was no genuine issue as to any

material fact except as to the amount of damages, and stating "that there is a real issue of fact."

An "agreed statement of facts" was filed stating it was:

"For purposes of plaintiff's motion for summary judgment, heretofore filed in this matter, the parties by their respective counsel have stipulated and agreed upon the following statement of facts :".

There followed in the agreed statement of facts recitation in regard to starting action—defendants' asking for and plaintiff's furnishing information, and settlement without plaintiff's knowledge. The statement, however, did not in any way refer to any agreement between plaintiff and defendants that defendants would "hold and secure any judgment that might be recovered against third-party tort-feasors for the joint benefit of plaintiff and defendants until the total respective rights of plaintiff and defendants thereto could be ascertained" as alleged by plaintiff in its declaration.

This agreed statement of facts established that on October 12, 1957, plaintiff paid $10 to one of the third-party tort-feasors and $700 to the other third-party tort-feasor, and secured from them a release of any claim they might have against plaintiff.

The trial court in an opinion refused to pass upon plaintiff's motion, stating:

"The stipulated facts are silent as to how the payment of the settlement was handled. In the ordinary course of events defendant Quimby and his attorney, Mr. McCargar, would have been named payees of the settlement check. If this is so, and both indorsed the instrument, the court would hold that both defendants held the funds as trustees. Out of these funds would first come the expenses of recovery, including the attorney fee, then the amount paid by plaintiff by way of compensation

would be reimbursed with the balance accruing to defendant Quimby. There would be personal liability on the part of both defendants for plaintiff's share. But for the determination of this issue there must be more stipulated facts or a hearing in lieu thereof before the court. The court will await counsel's action thereon."

An affidavit subsequently filed stating that both defendants were payees and indorsers of the draft evidently satisfied the court, and on August 30, 1965, an order granting summary judgment was entered jointly and severally against both defendants.

Defendant advised plaintiff of his selection of defendant McCargar as his attorney before starting his action. And plaintiff showed no disagreement with defendant's choice, or any concern as to whether the attorney was to be paid on a contingent basis or paid in some other way.

The pleadings disclose that defendants denied "there was any constructive trust or any fiduciary obligation" or any agreement to hold any moneys received from third-party tort-feasors for the benefit of plaintiff. Plaintiff's motion for summary judgment abandoned any such claim.

There was nothing unusual in the way the settlement was concluded, and the trial court recognized this fact stating in an opinion: "In the ordinary course of events defendant Quimby and his attorney, Mr. McCargar, would have been named payees of the settlement check."

The trial court in the first motion presented for summary judgment stated that the court would have to have proof as to whether there was an agreement between plaintiff and defendant McCargar that the funds would be held in trust for the plaintiff, but the second and final motion for summary judgment was granted solely on the proof that McCargar

was named as payee and indorsed the check. Plaintiff claims that the sole proof that defendant McCargar was indorser and payee was sufficient to justify summary judgment against defendant McCargar.

It is to be noted that the statute specifically provides for deduction of the expenses of recovery prior to a division of the settlement or judgment figure. The statute further provides a definition of expenses of recovery as follows:

"Expenses of recovery shall be the reasonable expenditures, including attorney fees, incurred in effecting such recovery."

The statute further provides that the expenses of recovery shall be apportioned by the court between the parties as their interests appear at the time of the recovery.

The summary judgment against defendant attorney McCargar was erroneously entered and must be reversed.

We reverse the judgment of the Court of Appeals. We affirm the trial court's judgment against defendant Quimby and reverse the trial court's judgment against defendant McCargar.

The cause is remanded for the purpose of entering an order in conformity with this opinion. No costs, neither party prevailing in full.

DETHMERS, C. J., and T. M. KAVANAGH, ADAMS, and T. E. BRENNAN, JJ., concurred with KELLY, J.

BLACK, J. (*for reversal*). I agree generally with Justice KELLY's view of part 3, section 15 (CLS 1961, § 413.15 [Stat Ann 1960 Rev § 17.189]), yet am unable to indorse his apparent conclusion that preponderating evidentiary support of plaintiff's allegation—that defendants agreed to "hold and secure. * * * for the joint benefit of plaintiff and

defendants"—is requisite to a decretal judgment of reimbursement in favor of plaintiff as against both defendants. My reasons in that regard will appear presently. But first to the procedural position of the cause at today's stage.

The parties have stipulated certain facts "For purposes of plaintiff's motion for summary judgment"; that only. Hence, there being general agreement that this latest motion for and grant of summary judgment was out of order, it is demonstrably in order to repeat that which unanimously introduced reversal of *R. R. Improvement Association* v. *Thomas* (1965), 374 Mich 175, 177, 178 (echoed by the writer upon agreed reversal of *Berkaw* v. *Mayflower Congregational Church* (1966), 378 Mich 239, 271, 272):

"On too many occasions in recent years this Court has found it necessary to remand equity cases for a reason known specially to equity's jurisdiction. See *Sternberg* v. *Baxter*, 373 Mich 8, 18; *Falkner* v. *Brookfield*, 368 Mich 17, 25; *Kent* v. *Bell*, 368 Mich 443, 451; *Kenney* v. *Village of Novi*, 367 Mich 75, 76, 77, and *Crocker* v. *Crocker*, 362 Mich 6, 8, all of which quote or cite *Culy* v. *Upham*, 135 Mich 131 (106 Am St Rep 388). In *Culy* v. *Upham* this regularly quoted passage appears (p 135):

" 'We do not wish, by our silence, to seem to approve the procedure adopted in this case. If we had disagreed with the trial judge on the legal proposition discussed in this opinion, we could not have made a final disposition of the case. We should have been forced to remand the record for another hearing in the court below. As a general rule, suits at chancery should be so tried in the lower court that, when they are appealed, this Court may finally dispose of the issue raised by the pleadings.' "

This appeal exposes anew the arrant evil of Michigan's 1963 "union" of law and equity. Pomeroy foresaw that evil and acted powerfully to meet it,

as we shall presently see. So did this Court in *Brown v. Kalamazoo Circuit Judge* (1889), 75 Mich 274.[1] It was indeed the announced motive for preparation and submission to the profession of Pomeroy's great work on equity jurisprudence. See the 1881 preface to that work, appearing in every edition thereof, particularly this portion of the third paragraph:

"As the central conception of this system is the abolition of all external distinctions between actions at law and suits in equity, the union of legal and equitable rights and remedies in one proceeding, and the substitution of many important equitable in place of legal methods, it was confidently supposed that in progress of time the doctrines of equity would obtain a supremacy over those of the law in the administration of justice, and that the entire jurisprudence of a State would gradually become more equitable, more informed with equitable notions. It must be confessed, I think, that the experience of the past 30 years in these States points to a directly contrary result. *Every careful observer must admit that in all the States which have adopted the reformed procedure there has been, to a greater or less degree, a weakening, decrease, or disregard of equitable principles in the administration of justice.*" (Emphasis supplied by present writer.)

---

[1] Read Joiner and Geddes, "The Union of Law and Equity," 55 Mich Law Rev 1059 (1957), providing all of the alleged reasons for union as then advocated. Those reasons were supported (p 1060) by sharp criticism of *Brown v. Kalamazoo Circuit Judge* (1889), 75 Mich 274, the opinion of which, written by Justice Campbell, unanimously upheld equity's constitutional status as a part of the judicial power. See Justice Campbell's discussion of the constitutional question (pp 278–285), the pith of which is concentrated around this yet unchallenged (in judicial proceedings distinguished from professorial theses) declaration of constitutional right: "The right to have equity controversies dealt with by equitable methods is as sacred as the right of trial by jury." 75 Mich 274, 284.

The *Brown Case* is worth reading again, now that our trial judges and trial attorneys have been compelled to work under "union." "Union" has turned out to be a misguided marriage, the spawn of which has been more litigatory expense, more delay and certainly more confusion of judicial responsibility.

As Pomeroy pointed out in the same preface, Parliament proceeded to guard equity against the quoted tendency by amending the English judicature act of 1873 to include the clause:

"Generally, in all matters in which there is any conflict or variance between the rules of equity and the rules of the common law with reference to the same matter, the rules of equity shall prevail." (1 Pomeroy's Equity Jurisprudence [5th ed, Symons] pp xxiii, xxiv. For the present phrasing of the amendment providing that "the rules of equity shall prevail," see 18 Halsbury's Statutes of England [2d ed Burrows, p 481]).

Nevertheless, when Michigan decided to unionize law and equity, neither the legislature nor this Court bothered to provide the protective influence of such a clause, either in the revised judicature act or in the Court Rules of 1963. Now there are no Pomeroys and no CAMPBELLS around. Every action brought in our circuit courts, now upon "complaint," is regarded generally and loosely as a lawsuit wherein the result is effected by a "judgment," not a "decree" (GCR 1963, 518.1), all to the detriment of equity as all know now by the unionized experience of 1963–1968.

Here, Circuit Judge Smith only excepted, no judge writing for this case thus far seems to have realized that it is purely equitable in nature.[2] The plaintiff employer, proceeding upon the theory of a constructive trust, charges the essentials and pleads for determination and impressment of an equitable lien upon proceeds received by an employee and his attorney when the two effected settlement of a sec-

[2] In the phrasing of the old song concerning two cats, the Justices went round and around on this in *Spoon-Shacket Company, Inc.*, v. *County of Oakland* (1959), 356 Mich 151. On that occasion the five Democratic nominees to the Court stood with Pomeroy, and the three Republican nominees stood with Blackstone's dogma: "By equity we mean nothing but the sound interpretation of the law."

tion 15 lawsuit without notice to or knowledge of one beneficially interested in that settlement. Aside from the purely technical and legally erroneous one drawn by them from section 15, the sole answer defendants offer as against such pleading is that they made no promise or agreement to consult with or account to the employer with respect to settlement of the section 15 action and that that employer, having failed to intervene in the section 15 action, is without cause or right as against them. Significant here is paragraph 7 of the stipulation of facts upon which plaintiff's motion for summary judgment was submitted to the circuit court:

"7. That on or about December 19, 1963, the defendant Clayton L. Quimby, through his attorney, defendant George L. McCargar, Jr., effected a settlement with the alleged third party tort-feasors for the sum of $25,000. This settlement was effected both without the knowledge or the consent of the plaintiff, and the plaintiff has received no funds therefrom, nor has it participated in or benefited in any other way from the settlement. The settlement agreement provided that, by stipulation, the circuit court action against the alleged third-party tort-feasors would be dismissed, and immediately upon the accomplishment of the settlement, the third party tort-feasor did cause the circuit court action against it to be dismissed, which dismissal was also accomplished without the knowledge or consent of the plaintiff. A true copy of the settlement agreement effected by defendants with the alleged third-party tort-feasors has also prior hereto been admitted into evidence as an exhibit and by this reference is here incorporated."

Now for the statute and the duty of reimbursement created thereby. Since its effective date the 1952 amendment of section 15 (PA 1952, No 155) has been widely and successfully employed according to its purposeful design, exceedingly more so than

detached appellate judges are apt to know.  Granting that its separately paragraphed phrasing is somewhat contradictory, the central plan of the section has never been unclear or difficult of application in our trial courts.  That central plan was to eliminate the irreversible choice which a compensably injured employee originally was required to make between the right to workmen's compensation and the right of suit against some third party, to permit prosecution of suit against that third party without jeopardizing the plaintiff employee's right to receive workmen's compensation to the fullest extent, and to provide that the employer have reimbursement, on account of workmen's compensation benefits "paid or payable to date or recovery," out of *any* amount recovered from such third party, the "expenses of recovery" having first been deducted.

As held by Judge Smith the reimbursement clause, appearing in the fifth paragraph of section 15, is controlling as against what defendants claim for other language of the section.  The clause employs "any" as that all-inclusive adjective which takes in "all," "of every kind," and "each one of all."  "Any" seems indeed "to mean just what it says."  See discussion of "any" and the due scope thereof when it is employed in contracts and statutes, *Harrington* v. *Interstate Business Men's Accident Ass'n* (1920), 210 Mich 327, 330, 331; and *Gibson* v. *Agricultural Life Ins. Co.* (1937), 282 Mich 282, 288, 289.  Now for the clause:

"Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or its workmen's compensation insurance carrier for any amounts paid or payable under the workmen's compensation act to date of recovery, and the balance shall forthwith be paid to the employee or his dependents or personal rep-

resentative and shall be treated as an advance pay-
ment by the employer on account of any future pay-
ment of compensation benefits."

There having been precedent controversy respect-
ing the interpretation of section 15 and the claimed
right of the plaintiff employee to settle with the de-
fendant tort-feasor and keep all, the quoted clause
prompts gentle question whether it would not have
been better—legally, equitably, morally, and ethical-
ly—to warn the employer of intent to settle for the
available amount so that the latter, as an alerted
intervenor, might proceed to have the controversy
settled by the court in the pending section 15 action.
But that was not to be and equity, as Judge Smith
rightly saw and heeded, does not propose to bless
what these withholders have done.

The Court's opinion, drafted by Justice KELLY,
fairly confirms my view of what the legislature in-
tended when section 15 was conceived and enacted.
But there is more to this case than the mere appli-
cation of a statute. There is the legal as well as
equitable duty to speak up when fair dealing calls
for more than silence and furtive action (*Nowicki*
v. *Podgorski* [1960], 359 Mich 18, 32; *Sullivan* v.
*Ulrich* [1949], 326 Mich 218); also the application
of equity's maxims to one who breaches that duty
for his own enrichment and does so at the expense
of another. Accordingly, and upon the limited rec-
ord made thus far, I hold the defendants *prima facie*
responsible as trustees for the due performance of
a constructive trust which, by their actions, arose
for the plaintiff's benefit. The allegation of "no
promise or agreement," accepting it veritably, is of
no relevance and makes no question of fact. We re-
jected that kind of a defense, unanimously, in the
like case of *Kent* v. *Klein* (1958), 352 Mich 652, 656,
657:

"Defendant urges again and again that she made no promise whatever to hold in trust, that nothing was said about a trust, and, as a clincher, that even if she had so orally promised the promise would have been unenforceable under the statute of frauds. Her conclusion is that she keeps the land.

"What is overlooked in all of this is the fact that the constructive trust is not a trust at all, any more than a quasi-contract is a contract. See 4 Scott on the Law of Trusts, § 462.1. Both are remedial devices. The constructive trust, as it was put by Mr. Justice Cardozo, 'is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not, in good conscience, retain the beneficial interest, equity converts him into a trustee.' *Beatty* v. *Guggenheim Exploration Co.,* 225 NY 380, 386 (122 NE 378). It arises by operation of law. (*Cf.,* 'unless by act or operation of law' in CL 1948, § 566.106 [Stat Ann 1953 Rev § 26.906] quoted in footnote, *supra.*) That defendant made no promise to hold in trust is utterly irrelevant. The constructive trust is as contemptuous of promises not made as of promises broken. The fact that a thief fleeing with his loot promises nothing avails him nothing. He remains a constructive trustee. *Lightfoot* v. *Davis,* 198 NY 261 (91 NE 582, 29 LRA NS 119, 139 Am St Rep 817). Fraud in the inception we do not require, nor deceit, nor chicanery in any of its varied guises, for it is not necessary that property be wrongfully acquired. It is enough that it be unconscionably withheld. *McCreary* v. *Shields,* 333 Mich 290; *Rudenberg* v. *Clark,* 72 F Supp 381. Nor is it necessary, to move the chancellor's conscience, that plaintiffs have suffered a loss, although in most cases there is both a loss to the plaintiffs and a like gain to the defendant. *United States* v. *Carter,* 217 US 286 (30 S Ct 515, 54 L ed 769); *Olwell* v. *Nye & Nissen Co.,* 26 Wash 2d 282 (173 P2d 652, 169 ALR 139); *Carey* v. *Safe Deposit & Trust Co.,* 168 Md 501 (178 A 242)."

To summarize:

So far as concerns the defendant McCargar, a lawyer, credit him with a smidgen of knowledge that the original right of this plaintiff employer to proceed against the sued tort-feasor had expired by limitation when he, McCargar, having requested and received the cooperation of that employer to a commonly desired end,[3] went ahead with this business of secretly procuring and retaining the fruits of a section 15 settlement. That being agreed fact, equity imputes to him the duty of timely disclosure to the cooperating employer of intent to settle separately, no matter his conviction that section 15 authorized what he did. And, having failed to perform such duty, equity charges him with having performed it with beneficial result. Such is this Court's obligation by force of equity's first and ninth maxims; that she regards as done what should have been done, and imputes resolute intent to fulfill an obligation.

That defendant McCargar should be paid, as and for "expenses of recovery," goes without saying. That he should on that account escape whatever responsibility equity attaches to his shrouded action is something else. For the present nothing further need be said beyond comment that the parties have stipulated only to such facts as are required for solution of the question of interpretation of said section 15. The equities and amounts payable, if any, have not as yet been worked out or agreed to; hence a full hearing of the case should now be ordered.

I would reverse the judgment of Division 3 and direct remand for such further proceedings as may

---

[3] It was stipulated below:

"5. That in pursuit of the action against the alleged third party tort-feasors, the defendants requested and sought from the plaintiff copies of investigation reports, medical reports, and log reports so as to assist them in the preparation and prosecution of their case. The plaintiff provided the defendants with the materials sought."

be consistent with foregoing views. Plaintiff should have costs of both appellate courts. Costs in circuit should abide the final result.

O'HARA, J. (*dissenting*). This case, while in part factually distinguishable from *Gamble* v. *American Asbestos Products Company* (1968), 381 Mich 105, is subject to the same observations which I made in my opinion in that case (pp 112–115).

The issue of notice to which I adverted in *Gamble* is complicated in this case by the "agreement" to protect the proceeds of the settlement. This case is all the more evidence of the need to review the effect of the notice provision in the statute and the method of application of the proceeds of an action against the negligent third party.

I agree with the result reached by the Court of Appeals.