FLOWER v GENSTERBLUM

Docket No. 78-79. Submitted June 13, 1978, at Lansing.—Decided October 18, 1978. Leave to appeal applied for.

Plaintiff William Flower, a state police officer, was struck by defendant Donald Gensterblum's motor vehicle while on duty and in the course of his employment. He filed a complaint against Mr. Gensterblum alleging negligence and against defendant The Brewery, Inc., alleging violation of the dramshop act. Plaintiff sought damages for "severe, painful and permanent injuries" and for "serious impairment of body functions and permanent serious disfigurement" but did not seek recovery for economic losses. The Michigan State Accident Fund, the Michigan state police workmen's compensation insurer which had made certain payments to Mr. Flower pursuant to the Workmen's Compensation Disability Act, sought to intervene, first by consent and then by motion, to recover its payments from any damages Mr. Flower might recover. The Ingham Circuit Court, Michael G. Harrison, J., denied the motion and certified the denial as a final order. The Michigan State Accident Fund appeals. *Held:*

The Michigan State Accident Fund is not discharging an obligation of the third-party motorist tortfeasor in paying compensation to the victim for economic losses since the Legislature has limited the motorist's liability to noneconomic losses; therefore, the Michigan State Accident Fund is not subrogated to the claim of the victim against the third-party motorist and has no standing to intervene.

Affirmed.

M. J. Kelly, J., dissented. While he agrees with respect to plaintiff's claim against the motorist he would hold that since plaintiff might recover damages for economic losses against The Brewery, Inc., under the dramshop act, the Michigan State Accident Fund is subrogated to plaintiff with respect to his claim under the act.

Reference for Points in Headnotes
[1-3] 82 Am Jur 2d, Workmen's Compensation §§ 429, 434.

OPINION OF THE COURT

1. WORKMEN'S COMPENSATION—STATUTES—SUBROGATION—TORTS—
THIRD-PARTY TORTFEASOR—ECONOMIC LOSSES—NONECONOMIC
LOSSES.

Subrogation applies only when a person, not acting voluntarily but under some compulsion, pays a debt or discharges an obligation for which another is principally liable and which in equity and good conscience ought to be discharged by the latter; a workmen's compensation carrier is not discharging the obligation of another where the employee is injured by a third-party motorist since the Legislature has limited tort liability of motorists to damages for noneconomic losses and since the workmen's compensation act confers upon an injured employee an immediate right to recover economic damages from the employer's insurer and a workmen's compensation carrier is therefore not subrogated to the claim of the injured employee against the third-party motorist and has no standing to intervene (MCL 500.3135[2][b], 418.827[5]; MSA 24.13135[2][b], 17.237[827][5]).

2. WORKMEN'S COMPENSATION—STATUTES—THIRD-PARTY TORTFEASORS
—RIGHT OF REIMBURSEMENT OF WORKMEN'S COMPENSATION IN-
SURER—NONECONOMIC LOSSES.

A statute allowing reimbursement of a workmen's compensation insurer from an employee's recovery from a third-party tortfeasor does not apply to a suit by an employee injured by a motorist since the no-fault act limits the liability of the motorist to damages for noneconomic injury (MCL 500.3175[2][b]; MSA 24.13135[2][b]).

DISSENT BY M. J. KELLY, J.

3. WORKMEN'S COMPENSATION—STATUTES—THIRD PARTY TORTFEASORS
—RIGHT OF REIMBURSEMENT OF WORKMEN'S COMPENSATION IN-
SURERS—NONECONOMIC LOSSES.

*A statute allowing a workmen's compensation insurer reimbursement from an employee's recovery against a third-party tortfeasor does not apply to a suit by an employee injured by a motorist because the no-fault act limits the liability of the motorist to damages for noneconomic injury, however, it does apply to a claim based upon the dramshop act since the act would permit recovery for both economic and noneconomic losses (MCL 436.22; MSA 18.993).*

*Van Deveer, Garzia, Tonkin, Kerr & Heaphy,*

*P.C.* (by *C. F. Boyle, Jr.),* for plaintiff-appellant Michigan State Accident Fund.

*Smith & Maher,* for plaintiff-appellee Flower.

*Warner, Hart, Morgan, Fuzar & Williams,* for defendant-appellee The Brewry, Inc.

*O'Brien & Noud,* for defendant-appellee Gensterblum.

Before: D. E. HOLBROOK, P.J., and M. J. KELLY and P. J. MARUTIAK,* JJ.

D. E. HOLBROOK, P.J. On October 10, 1975, plaintiff William Flower, a state police officer, was struck by defendant Donald Gensterblum's vehicle while on duty and in the course of the plaintiff's employment. On May 20, 1977, Flower filed a complaint against Gensterblum, alleging negligence, and against defendant The Brewery, Inc., doing business as The Silver Dollar Saloon, alleging violation of the dramshop act, MCL 436.22; MSA 18.993. The plaintiff sought $500,000 damages, denominated recovery for "severe, painful and permanent injuries" and "serious impairment of body functions and permanent serious disfigurement". In accord with the no-fault act, recovery for economic losses was not sought.[1]

Michigan State Accident Fund, workmen's compensation insurer for the Michigan state police, paid wage loss benefits to Flower from the date of the accident through October 29, 1976. The Accident Fund also paid plaintiff's medical expenses through October of 1977. These payments were

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] As noted above, the plaintiff seeks only noneconomic damages in the instant complaint. Should his recovery exceed his noneconomic damages, as reasonably calculated, the appellant may then intervene.

made pursuant to the Worker's Disability Compensation Act of 1969, MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.*

After the Accident Fund was denied consent to intervene in plaintiff's action against Gensterblum, it filed a motion to intervene pursuant to GCR 1963, 209.1(1) and MCL 418.827(1); MSA 17.237(827)(1), in order to recover its payments from any damages plaintiff might receive. Plaintiff Flower and defendants Gensterblum and The Brewery all opposed the Accident Fund's motion to intervene. The motion was denied by the circuit court, which also certified its action to be a final order subject to appeal as of right.

Appellant Accident Fund contends that GCR 1963, 209.1(1), when considered in conjunction with the Worker's Disability Compensation Act, confers upon it an unconditional right to intervene in the instant action. Rule 209.1(1) provides that:

"Anyone shall be permitted to intervene in an action
"(1) when a statute of this state confers an unconditional right to intervene."

According to appellant, MCL 418.827(1); MSA 17.237(827)(1) grants it such a right. It states:

"*Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person* other than a natural person in the same employ or the employer *to pay damages in respect thereof,* the acceptance of compensation benefits or the taking of proceedings to enforce compensation payments shall not act as an election of remedies but the injured employee or his dependents or personal representative may also proceed to enforce the liability of the third party for damages in accordance with the provisions of this section. If the injured employee or his dependents or personal representative

does not commence the action within 1 year after the occurrence of the personal injury, then the employer or carrier, within the period of time for the commencement of actions prescribed by statute, may enforce the liability of such other person in the name of that person. Not less than 30 days before the commencement of action by any party under this section, the parties shall notify, by certified mail at their last known address, the bureau, the injured employee, or in the event of his death, his known dependents or personal representative or his known next of kin, his employer and the carrier. *Any party in interest shall have a right to join in the action."* (Emphasis added.)

With respect to reimbursement, it provides at MCL 418.827(5); MSA 17.237(827)(5):

"In an action to enforce the liability of a third party, *the plaintiff may recover any amount which the employee or his dependents or personal representative would be entitled to recover in an action in tort.* Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, *shall first reimburse the employer or carrier for any amounts paid or payable* under this act to date of recovery and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payments of compensation benefits." (Emphasis added.)

Clearly, were this an ordinary tort action arising out of the plaintiff's employment but not involving a motor vehicle, the appellant's claim for intervention would be uncontestable. The policy behind this requirement of reimbursement was discussed by the Supreme Court in *Pelkey v Elsea Realty & Investment Co,* 394 Mich 485; 232 NW2d 154 (1975). In *Pelkey* the Court relied upon this section of the worker's disability act to uphold the insurer's right to treat two-thirds of an employee's third

party settlement for pain and suffering as credit in
its favor when the employee sought additional
benefits for economic loss. At p 492 it quoted 2A
Larson, Workmen's Compensation Law, § 74.35, p
14–246 to the effect that:

" '[I]t is quite clear, as the cases now stand, that the
prevailing rule in the United States refuses to place an
employee's third-party recovery outside the reach of the
employer's lien on the ground that some or all of it was
accounted for by damages for pain and suffering.' (Foot-
note omitted.)"

The Court then upheld the majority view, as
adopted in Michigan by MCL 418.827(5), against
due process and equal protection attacks. The
Court first noted that as originally enacted, work-
men's compensation statutes required an election
of remedies: the injured employee could not pursue
recovery from both the tortfeasor and the insurer.
*Pelkey, supra* at 493, *Albert A Albrecht Co v
Whitehead & Kales Iron Works,* 200 Mich 109; 166
NW 855 (1918). As the requirement of election of
remedies had been abolished, therefore theoreti-
cally allowing the employee to seek a *double recov-
ery,* the Court was unabashed in allowing the
insurer to claim reimbursement. "We do not find
the provision for reimbursement to be an arbitrary
denial of a property right. The right to reimburse-
ment is justified by the abrogation of the election
of remedies requirement." *Pelkey, supra* at 493.
Allowing reimbursement in these cases basically
meant that the victim could claim the larger of his
two recoveries, and no more.

The Court also allowed an insurer to seek reim-
bursement out of the employee's settlement with a
third party in *Transamerican Freight Lines, Inc v
Quimby,* 381 Mich 149; 160 NW2d 865 (1968). This

case is of limited precedential value, however, due to the unique fact situation, amounting very nearly to the creation of an estoppel against the employee.

Appellees contend, and the trial court held, that the worker's compensation act as interpreted in *Pelkey* is inapplicable to the instant case due to the subsequent enactment of the no-fault insurance act of 1973, MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.,* which bars suit in tort against third persons for economic losses. MCL 500.3135; MSA 24.13135. This section provides in pertinent part that:

"(2) Notwithstanding any other provision of law, *tort liability* [with respect to the operation of motor vehicles] * * * *is abolished* except as to:

* * *

"(b) Damages for noneconomic loss [or excessive economic loss or intentionally inflicted injuries]." (Emphasis added.)

On one of two occasions when this Court has considered this question previously it decided *Wrobel v Wayne County Road Comm,* 79 Mich App 484; 261 NW2d 58 (1977), *lv pending.* In a very brief opinion the Court held that the defendant road commission was entitled to be subrogated to the rights of the employee so that it might recover its payments of approximately $20,000 for lost wages and medical expenses (so-called economic loss) from the $25,000 which the defendant received from the tortfeasor in settlement of his claims for noneconomic loss. The majority explained its reasoning as follows at 486:

"Such a result does not seem equitable. However, in *Pelkey v Elsea Realty & Investment Co,* 394 Mich 485;

232 NW2d 154 (1975), the Supreme Court allowed the defendant *to be subrogated for plaintiff's pain and suffering, a noneconomic loss.* We are bound by the *Pelkey* decision."

Judge T. M. BURNS' concurring opinion agreed that *Pelkey* was controlling. Nevertheless, he admonished at 486 that:

"An employer or a compensation carrier should not be allowed to seek reimbursement out of a recovery by the employee against a third-party tortfeasor where the employer or carrier did not pay compensation for the injury which the recovery represents. Compensation carriers do not pay benefits for noneconomic loss."

Judge BURNS' concern in this regard was justified in that the compensation carrier's right to indemnity has traditionally been interpreted as a statutorily created right of subrogation. *Bay State Milling Co v Izak,* 310 Mich 601, 604; 17 NW2d 769 (1945), and authorities cited therein. "[S]ubrogation", according to 83 CJS, Subrogation, § 8, p 600, "will be applied whenever a person not acting voluntarily, but under some compulsion, pays a debt or *discharges an obligation for which another is primarily liable* and which in equity and good conscience ought to be discharged by the latter". (Emphasis added.)

Of course, such a right of indemnification and subrogation created no difficulties when legislative intent was clearly to permit actions against third parties precisely in order that the compensation carrier might be reimbursed. *Gamble v American Asbestos Products Co,* 381 Mich 105, 112; 159 NW2d 839 (1968), *Petrosian v Frizell,* 25 Mich App 141, 145; 181 NW2d 10 (1970), *Arnett v General Motors Corp,* 22 Mich App 658; 177 NW2d 704

(1970). For this reason, it was also considered a necessity, in order to avert the potential for unconscionable subversion of the statutory scheme, that the carrier be allowed to reach *any* recovery of the injured employee, regardless of its denomination. *Quimby, supra.*

The legislative intent is no longer clear. Although the *Wrobel* Court gave the matter little attention, enactment of the no-fault statute and the consequent *elimination* of tort liability for economic loss indicates a legislative determination that *neither* the victim *nor* his insurer shall recover such damages from the tortfeasor. At the same time it expressly reserved liability for noneconomic loss.

In a more recent case the panel of Judges RILEY, author, T. M. BURNS and CYNAR considered the identical question in *Reliance Ins Co v Messina Trucking, Inc,* 83 Mich App 159; 268 NW2d 328 (1978). In a unanimous decision, the Court relied upon passage of the no-fault act, *supra,* subsequent to the *Pelkey* decision, in holding that an insurer is not entitled to recover benefits paid from the employee's recovery for noneconomic loss. The *Reliance* Court took note of the *Wrobel* opinion, however, it found the reasoning of *Murray v Ferris,* 74 Mich App 91; 253 NW2d 365 (1977) more convincing in holding MCL 418.827(5); MSA 17.237(827)(5) "unconstitutional as applied to employees injured in automobile accidents where tort recovery is limited by MCL 500.3135; MSA 24.13135". 83 Mich App at 165. The *Murray* Court had held MCL 500.3116; MSA 24.13116, which allowed the *no-fault insurer* to recoup his damages from the injured insured's noneconomic loss recovery against the tortfeasor, to be unconstitutional as a violation of equal protection. It noted at 95 that "[t]he function of recovery in tort is to make

the victim whole". The Court found that since persons who do not suffer noneconomic losses are fully recompensed, whereas persons who suffer such losses, when forced to indemnify their insurer are not, the statutory scheme in this respect constituted arbitrary discrimination, contrary to Const 1963, art 1, §§ 2 and 17.

We do not find it necessary to question the constitutionality of MCL 418.827(5), in order to adopt the result reached in *Reliance.* As noted above, the Supreme Court in *Pelkey* felt it necessary to allow the workmen's compensation insurer subrogation rights, even with respect to damages denominated "noneconomic", in order to avoid the possibility of double recovery. The Supreme Court's concern in this regard was even more clearly illuminated in *Quimby, supra,* where to have held otherwise would have been grossly unfair to the insurer. Since enactment of no-fault, however, it can no longer be said that the carrier is "discharging the obligation of another". The legislative repudiation of tort liability in this instance must be seen as a restriction upon the compensation carrier's standing under MCL 418.827(1).

As noted above, the worker's compensation act confers upon the injured employee an immediate right to recover economic damages from the employer's insurer. Under the no-fault act, specifically MCL 500.3135, the employee is not allowed to seek a second recovery for these damages from the tortfeasor: "tort liability [for economic loss] is abolished", MCL 500.3135(2). Appellant State Accident Fund's right to intervene in plaintiff's action arises only as a "party in interest" under MCL 418.827(1). In order for the insurer's right of subrogation to arise under this statute, "the injury for

which compensation is payable" must be one "creating a legal liability" in another. The plaintiff received compensation for economic injury, and by contrast to the state of the law when *Pelkey* was decided by the Supreme Court, the tortfeasor is no longer liable for ordinary economic injuries. Therefore, under MCL 418.827(1), appellant State Accident Fund is no longer a party in interest, has not satisfied the debt of another, and has no standing to intervene under GCR 1963, 209.1(1).

Although MCL 418.827(5) appears to contradict this interpretation, it is troublesome primarily because it preceded the no-fault insurance legislation. Unlike MCL 418.827(1), it does *not* confer standing. It is a declaration of priorities which reflects legislative concern over *double recovery* by the plaintiff to the exclusion of the insurer. Read together, subsections (1) and (5) obviously presuppose that the employee's recovery in tort will include the amounts received by him from the insurer, thereby, under standard insurance principles, conferring a right of subrogation upon the insurer. *Where the insurer lacks standing under subsection (1), however,* the declaration of priorities contained in sub-section (5) must not apply. Although the resulting interpretation requires a tortured reading of subsection (5), we find this to be an unavoidable result of the subsequent enactment of the no-fault insurance scheme with its radical departure from the previously existing tort law. The fundamental assumption underlying the enactment of subsection (5) is no longer operative.

As suggested earlier in *Wrobel* and *Reliance,* to reach any other result under these circumstances would be to deny the victim a complete recovery. As the Court itself recognized, the result reached in *Wrobel* was inequitable. We find it to have been

unnecessary as well. Clearly the no-fault insurance scheme was not intended to prevent complete recovery on behalf of the victim. It merely separated the plaintiff's recovery into two distinct classes, one recoverable from the tortfeasor, the other recoverable from the injured's insurer alone. It is true that the employee may seek to claim a second recovery for economic damages from his automobile insurer. According to the general view, such a recovery would *not* be subject to the compensation carrier's claims for reimbursement, as it is considered a personal contract right, bargained for by the victim. 101 CJS, Workmen's Compensation, § 1045, p 628. See also *Meyers v Meyers Oil Co,* 88 SD 166; 216 NW2d 820 (1975). The fact that some plaintiffs may thus achieve a disfavored double recovery by carrying personal automobile insurance coverage, we consider to be a problem for the Legislature to consider.

Under the facts in this case we rule that the appellant must be denied standing to intervene.

Affirmed. Costs to appellees.

P. J. MARUTIAK, J., concurred.

M. J. KELLY, J. *(dissenting).* I concur in the holding of the majority that a workmen's compensation insurer is not entitled to reimbursement for economic loss benefits paid to the injured employee out of that employee's recovery of noneconomic losses from the third-party tortfeasor. However I'm not prepared to hold that the intervention and reimbursement provisions of MCL 418.827(1) and (5); MSA 17.237(827)(1) and (5) are completely inapplicable to the present case. This conclusion is dictated by the procedural posture of this case which demonstrates an instance where intervention and reimbursement would be entirely appropriate.

Although seeking only noneconomic damages in this suit, plaintiff joined the driver of the automobile, defendant Gensterblum, with The Brewery, Inc., d/b/a The Silver Dollar Saloon as a codefendant, alleging liability based upon the dramshop act. MCL 436.22; MSA 18.993. This aspect of the present suit is an ordinary tort action and there is no question but that the dramshop act, which authorizes recovery of actual and exemplary damages, would permit the plaintiff to recover both economic and noneconomic losses from the codefendant Brewery. Thus, if the majority's holding is applicable to plaintiff's recovery from both defendants, the possibility of double recovery, now obviated by MCL 500.3135; MSA 24.13135 as regards the automobile driver, is resurrected. I do not think that the majority intended this result.

In my opinion, the limitation which the majority has placed upon the intervention and reimbursement provisions of the workmen's compensation act should be read as applying only where the nofault statute limits the injured employee's recovery to noneconomic losses. In the case of liability based upon the dramshop act, where recovery of economic losses is possible, these provisions, as interpreted in *Pelkey* and *Wrobel,* should control and permit both intervention and reimbursement by the insurance carrier.

I would therefore grant the Michigan State Accident Fund's motion to intervene pending the Supreme Court's review of the holding in *Wrobel.* The trial court could enter a protective order prohibiting the Michigan State Accident Fund's attorneys from interfering with the control and progress of the case by plaintiff's attorney and further prohibiting disclosure of the fact of workmen's compensation insurance from the jury.