COMMISSIONER OF INSURANCE *v.* AMERICAN LIFE INS. CO.

1. INSURANCE—TEST OF INSOLVENCY OF COMPANY.

    The test of insolvency of a stock insurance company is its inability to meet maturing obligations; when it is ''actuarially insolvent.''

2. SAME—STOCK COMPANY—INSOLVENCY—FINDING OF COURT.

    Finding of trial court in receivership proceeding that defendant stock insurance company was insolvent within meaning of insurance code *held,* sustained by competent evidence (3 Comp. Laws 1929, § 12397).

3. SAME—FILING OF EXAMINER'S REPORT—ADMINISTRATIVE HEARING.

    Provisions of insurance code relative to granting an administrative hearing on report of examiners of stock insurance company before the report is filed *held,* directory rather than mandatory (3 Comp. Laws 1929, § 12254).

4. SAME—ADMINISTRATIVE HEARING—INSOLVENCY—RECEIVERSHIP.

    Commissioner of insurance *held,* justified in refusing a stock insurance company an administrative hearing before filing petition for appointment of receiver under circumstances disclosing company to be insolvent and in an unsound financial condition (3 Comp. Laws 1929, § 12254).

5. SAME—BUSINESS AFFECTED WITH A PUBLIC INTEREST.

    The insurance business is affected with a public interest.

6. SAME—CONSTRUCTION OF STATUTES.

    The statutes regulating the insurance business should be liberally construed in favor of policyholders, creditors and the public.

7. STATUTES—CONSTRUCTION—PUBLIC INTEREST.

    Rules of construction applicable to legislation in which the public at large are interested require liberality, while those with reference to legislation granting powers or privileges to individuals, for their own advantage, require strict construction as against such individuals.

8. SAME—PUBLIC INTEREST.

Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice; to favor public convenience and to oppose all prejudice to public interests.

9. SAME—CONSTRUCTION WHEN MEANING DOUBTFUL.

In construing statutes of doubtful meaning, courts are authorized to collect the intention of the legislature from the occasion and necessity of the law, from the mischief felt, and the objects and remedy in view, and the intention is to be taken, or presumed, according to what is consonant to reason and good discretion.

10. INSURANCE—LEGISLATIVE INTENT—RECEIVERSHIPS.

It can be fairly assumed that one of the reasons for enactment of legislation placing the property of a stock insurance company which is in straitened circumstances in the hands of the commissioner of insurance either as custodian or receiver, without further compensation than his salary, was to prevent certain evils attendant upon appointment of court receivers, such as high and exorbitant fees paid to them (3 Comp. Laws 1929, §§ 12264–12266, 12270).

11. SAME—RECEIVERS—CUSTODIANS—VENUE—JURISDICTION OF INGHAM CIRCUIT COURT.

Section of insurance code authorizing commissioner of insurance to institute proceedings in the Ingham circuit court for liquidation or receivership of insurance companies *held*, to have authorized alternative remedies of custodial receivership or liquidation, which were pursuable in the same petition (3 Comp. Laws 1929, §§ 12264–12266, 12270).

12. COSTS—CONSTRUCTION OF A STATUTE.

No costs are allowed in insurance company receivership appeal where construction of a statute is involved.

Appeal from Ingham; Carr (Leland W.), J. Submitted April 25, 1939. (Docket No. 77, Calendar No. 40,370.) Decided September 5, 1939.

Bill by Charles E. Gauss, Commissioner of Insurance, against American Life Insurance Company for order to show cause why plaintiff should not take possession of assets of defendant, for an injunction,

a permanent receiver, and other relief. Decree for plaintiff. Defendant appeals. Affirmed.

*Thomas Read,* Attorney General, and *Edmund E. Shepherd* and *John Panchuk,* Assistants Attorney General, for plaintiff.

*Clark, Klein, Brucker & Waples,* for defendant.

*Shields, Ballard, Jennings & Taber,* for receiver.

SHARPE, J. This appeal is from an order appointing the commissioner of insurance as temporary receiver of the American Life Insurance Company in a suit instituted in the circuit court of Ingham county pursuant to part 1, chap. 3, of the Michigan insurance code (3 Comp. Laws 1929, §§ 12263–12270 [Stat. Ann. §§ 24.40–24.48]).

On April 12, 1938, an order was entered directing the insurance company to show cause why the commissioner of insurance should not take possession of its property and conduct of its business or for the liquidation of the business of the insurance company should the interest of the policyholders and the public so require.

On April 16, 1938, the insurance company moved to dismiss the proceedings on the grounds that the petition did not affirmatively allege insolvency; that the court had no authority to issue *ex parte* a temporary injunction or designate the commissioner of insurance as temporary custodian of the property of the defendant; that no administrative hearing on the report of examination of the corporation was granted by the commissioner before the proceedings were instituted; and that under the general insurance law the circuit court of Ingham county had no jurisdiction for the reason that the principal office of defendant corporation was in Wayne county. This motion was denied and defendant filed a return.

After a hearing the trial court found the following to be the facts: The defendant company was originally incorporated under the name of the Northern Assurance Company in 1907 with an authorized capital stock of $100,000 and a surplus of $25,000. In 1921, the defendant company reinsured the policyholders of the American Life Insurance Company of Des Moines, Iowa, and at that time or shortly thereafter amended its articles of incorporation to change its name to the one now in use. In 1922 its capital stock was doubled and in 1928 the capital stock was increased to $500,000. The additional stock issued was distributed in each instance in the form of stock dividends. As of December 31, 1937, the company was authorized to carry on its business in Michigan, Indiana, Iowa, Oklahoma and Texas, but prior to the above date the corporation had been duly admitted to carry on its business in 16 other States from which it withdrew during the period from 1926 to 1934. In February, 1938, the insurance company applied for renewals of permits to carry on business in the five above-named States, but such permits were not granted. An appraisal of some of the company's assets was made between March 15 and 31, 1938, by William W. Tanney, who was selected by the commissioner of insurance. The appraisal disclosed that the company assets could be divided into three groups, *i.e.*, Detroit real estate, real estate in the valley of the Rio Grande, on which defendant company holds mortgages, and certain securities in the bond portfolio.

The trial court said in his opinion, "Considering the testimony of all of the witnesses I see no escape from the conclusion that the aggregate value of the parcels of real estate appraised in the Detroit area is substantially less than the aggregate book value as shown by the books of the company and its report to the department of insurance."

The court found that as to the value of defendant's interests in the Rio Grande valley, the defendant company found it necessary to foreclose most of the mortgages taken by it; that the land consists of approximately 30,000 acres, classified as brush land, cultivated land and citrus fruit property; that the property is of such a character and extent as to render it impossible to dispose of it in the immediate future; that nearly $3,000,000 is invested in such property; and that sales made of some of this property in 1937 at prices below values now claimed indicate that the present value of the property is speculative and not equal to the value placed upon it on the company's books.

The principal securities that are in dispute consist of bonds of railroad and public utility companies, and the trial court found that they were listed on the books of the insurance company at values far in excess of the market values of the present time or at the time of their purchase. The trial court further found that the continuance in business of the insurance company without any strengthening of its financial situation would be hazardous from the standpoint of policyholders, creditors and the public generally. The effect of the finding of the trial court was that the insurance company was insolvent.

The test of insolvency as applied to banks is well stated in *Greene* v. *Ancient Order of Gleaners,* 267 Mich. 488, where we said, "Practically all authorities define insolvency, in its legal sense, as existing whenever a bank from any cause is unable to pay its obligations in the ordinary or usual course of business." The accepted definition of insolvency of stock insurance companies is found in an article appearing in 30 Michigan Law Review, pp. 1040, 1060, where it is said:

"The very function of insurance companies is the payment of claims as they fall due. But it is neces-

sary to distinguish the mutual non-stock association from the stock corporation. One of the significant attributes of the mutual association is the power or privilege of the entity to levy such assessments from time to time as may be necessary for the payment of maturing claims. Equilibrium between all assets and all liabilities is not required. Therefore, courts in proceedings involving mutual companies consistently define 'insolvency' as an inability to meet maturing obligations. For most purposes stock companies are like ordinary private corporations. But in regard to receivership there is a difference; statutes generally authorize the appointment of a receiver of such corporations when, among other circumstances, the capital of the company has become impaired beyond a certain percentage, or when the corporation is 'actuarially insolvent.'"

The Michigan insurance code provides that:

"No company shall be permitted to transact business within this State, unless the amount of its assets shall equal the net value of all its outstanding obligations, as determined according to the assumptions in regard to rates of interest and mortality as hereinbefore provided." Act No. 256, Pub. Acts 1917, part 3, chap. 1, § 10 (3 Comp. Laws 1929, § 12397 [Stat. Ann. § 24.220]).

The above section is a standard by which the trial court may determine whether an insurance company is insolvent. We have carefully examined the record and hold that there was competent evidence to sustain the finding of the trial court that defendant insurance company was insolvent within the meaning of the above statute.

Defendant insurance company contends that an administrative hearing is a condition precedent to the right or power of the State to institute insolvency proceedings against an insurance company and rely upon 3 Comp. Laws 1929, § 12254 (Stat. Ann.

§ 24.12), as authority therefor. It is conceded that an administrative hearing was not held; and that on April 12, 1938, an *ex parte* order was made appointing the commissioner of insurance temporary custodian of the property and business of defendant company to take over the property and business and to exclude the officers and directors from the offices of defendant company pending hearing on the order to show cause.

That portion of 3 Comp. Laws 1929, § 12254, upon which appellant relies in this instance reads:

"Such deputy or examiners shall make a full and true report and furnish the company a copy thereof, of every examination which shall comprise only facts appearing on the books, records or documents of such corporation, or ascertained from sworn testimony of its officers or agents or other persons examined under oath, concerning its affairs and such conclusions and recommendations as may be reasonably warranted from such facts so disclosed. The commissioner of insurance shall grant a hearing to any corporation examined, upon its request, before filing such report and may withhold any such record from public inspection for such time as he may deem proper. He may, if he deem it for the interest of the public to do so, after such hearing, publish any such report or the result of any such examination as contained therein, in one or more newspapers of general circulation in the State."

Prior to the application for the appointment of a receiver, an examination of the American Life Insurance Company was held and after a report of that examination was submitted, the commissioners of five States in which the company was admitted to do business held a conference, reviewed the report, and approved its findings and conclusions. On April 11, 1938, the insurance company was notified

of the action taken, furnished with a copy of the report, and was informed that in the opinion of the commissioners it revealed a condition of insolvency. Defendant insurance company demanded a hearing upon this report, but was refused.

Plaintiff contends that there is no prohibition in section 12254 against the institution of appropriate judicial proceedings when the report discloses insolvency or an unsound financial condition, hazardous to the public; that other provisions of the law authorize revocation of the license of an insurance company without a hearing when it is found to be in an unsound financial condition. 3 Comp. Laws 1929, § 12259 (Stat. Ann. § 22.17).

Section 39 of the New York insurance law relating to examination of insurance companies contains a substantially identical provision: ''The superintendent shall grant a hearing to the corporation, or to the insurer, or organization examined before filing any such report.'' *

In *Conway* v. *Landlord-Taxpayers' Association, Inc.*, 134 Misc. 533 (236 N. Y. Supp. 292), the court held in a proceeding for an order to take possession of the property and liquidate the business of the insurance company that an objection that a hearing was not afforded on the report of examination was not a condition precedent. The court said:

''The sole ground of opposition is that there has not been a hearing pursuant to section 39 of the insurance law (as amended by Laws 1923, chap. 443). That section does not apply, as it appears that this motion is made pursuant to section 63 (liquidation chapter), which is not limited by any other section of the insurance law.''

In our opinion the provisions of the statute relative to an administrative hearing are directory

---

* McKinney, Consolidated Laws of New York, § 39.—REPORTER.

rather than mandatory. The circumstances were such that the commissioner of insurance was justified in refusing an administrative hearing before filing a petition for the appointment of a receiver.

It is next contended that the circuit court of Ingham county had no jurisdiction to entertain a petition for temporary custodian, as exclusive jurisdiction is vested in the circuit court of Wayne county, the home office of the insurance company.

Section 12264, 3 Comp. Laws 1929 (Stat. Ann. § 24.41), provides that under certain conditions:

"The commissioner of insurance may * * * apply to the circuit court in the judicial circuit in which the principal office of such corporation is located, for an order directing such corporation to show cause why the commissioner should not take possession of its property and conduct its business, or for such other relief as the nature of the case and the interest of its policyholders, creditors, stockholders, or the public may require."

Section 12265, 3 Comp. Laws 1929 (Stat. Ann. § 24.42), provides:

"On the return of such order to show cause, and after a full hearing, the court shall either deny the application or direct the commissioner forthwith to take possession of the property and conduct the business of such corporation, and retain such possession and conduct such business until * * * it shall, after a like hearing, appear to the court that the ground for such order directing the commissioner to take possession has been removed and that the corporation can properly resume possession of its property and the conduct of its business."

Section 12266, 3 Comp. Laws 1929 (Stat. Ann. § 24.43), provides:

"If, on like application an [and] order to show cause, and after a full hearing, the court shall order

a liquidation of the business of such corporation, such liquidation shall be made by and under the direction of the commissioner of insurance who may deal with the property and business of such corporation in his own name as commissioner or in the name of the corporation, as the court may direct, and shall be vested by operation of law with title to all the property, contracts and rights of action of such corporation. * * * The order of liquidation shall, unless otherwise directed by the court, provide that the dissolution of the corporation shall take effect upon the entry of such order.''

Section 12270, 3 Comp. Laws 1929 (Stat. Ann. § 24.47), provides:

''In any case arising under this chapter the commissioner of insurance may file his petition for liquidation or receivership in the circuit court for the county of Ingham, and the preliminary steps towards the appointment of a receiver shall be taken and heard in such circuit, and the circuit court of Ingham county may at any time thereafter transfer such case to the circuit court of the county in which such company may have its principal place of business, for such further steps and action as may be necessary in the premises, as in cases of change of venue.''

Defendant contends that 3 Comp. Laws 1929, §§ 12264, 12265, and 12266 provide for two types of proceedings; that sections 12264 and 12265 provide a procedure whereby the commissioner, under certain conditions, may file a petition in the judicial circuit in which the principal office of the corporation is located and obtain an order to show cause and the court may authorize the commissioner to take possession, while the procedure under section 12266 looks to the dissolution of the insurance corporation; that the petition filed in the instant case is not one for dissolution and liquidation of defendant insurance company under section 12266, but seeks the

appointment of a custodian under section 12265; and that under the petition filed, the circuit court of Wayne county (home office of defendant insurance company) has exclusive jurisdiction.

It is the claim of plaintiff that the provisions of part 1, chap. 3, of the insurance code (3 Comp. Laws 1929, § 12263 *et seq.* [Stat. Ann. § 24.40 *et seq.*]), establish a consistent and harmonious system designed for the protection of insurance policyholders, creditors and the public; that the remedies afforded by the chapter are commutual, and, therefore, provisions for "custodianship," provided by sections 12264 and 12265 when appropriate, lead logically to "liquidation" of the insurance company under the provisions of section 12266 and a petition may pray in the alternative for "custodianship" or for "liquidation;" that the relief granted depends upon the facts and circumstances disclosed to the trial court as the cause proceeds to its final conclusion; that the petition filed in this cause seeks not only a temporary "custodianship" but in the alternative prays for "liquidation" of the business of the insurance company; and that the circuit court of Ingham county had jurisdiction to entertain the petition of the commissioner of insurance and grant appropriate relief.

In our interpretation of the general insurance law in its application to the facts in the instant case, we have in mind that the insurance business is affected with a public interest; and that the law should be liberally construed in favor of policyholders, creditors and the public.

In *Merchants Mutual Automobile Liability Ins. Co.* v. *Smart,* 267 U. S. 126, 129 (45 Sup. Ct. 320), the court said:

"It is well settled that the business of insurance is of a peculiar character, affects so many people,

and is so intimately connected with the common good that the State creating insurance corporations and giving them authority to engage in that business may, without transcending the limits of legislative power, regulate their affairs so far at least as to prevent them from committing wrongs or injustice in the exercise of their corporate functions.''

See, also, *State, ex rel. National Mutual Ins. Co.,* v. *Conn,* 115 Ohio St. 607 (155 N. E. 138, 50 A. L. R. 473).

In *Board of Commissioners of Vigo County* v. *Davis,* 136 Ind. 503, 511 (36 N. E. 141, 22 L. R. A. 515), it was said:

''Rules of construction applicable to legislation, in which the public at large are interested, require liberality, while, with reference to legislation granting powers or privileges to individuals, for their own advantage, require strict construction as against such individuals.''

In *Attorney General, ex rel. Common Council of the City of Detroit,* v. *Marx,* 203 Mich. 331, we quoted the following from 2 Lewis' Sutherland Statutory Construction (2d Ed.), § 490:

'' 'Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice; to favor public convenience and to oppose all prejudice to public interests.' ''

In *Sibley* v. *Smith* (syllabus), 2 Mich. 486, and again in *Detroit Common Council* v. *Engel,* 207 Mich. 106, we said:

''In construing statutes of doubtful meaning, courts are authorized to collect the intention of the legislature from the occasion and necessity of the law—from the mischief felt, and the objects and rem-

edy in view—and the intention is to be taken, or presumed, according to what is consonant to reason and good discretion."

Moreover, in construing a statute it is helpful to consider the law as it existed prior to the enactment, and particularly the mischief sought to be remedied by legislation. See *Michigan Dairy Co.* v. *Runnels,* 96 Mich. 109; *Laing* v. *Township of Forest,* 139 Mich. 159.

Prior to the enactment of Act No. 216, Pub. Acts 1911, the law of Michigan regulating insurance companies made express provision for the appointment of court receivers. We think it can be fairly assumed that one of the reasons for the enactment of the present legislation was to prevent certain evils attendant upon such proceedings, such as the high and exorbitant fees paid to court receivers.

The present legislation placed upon the commissioner of insurance the sole responsibility involved in the liquidation of such corporations without further compensation than the salary of his office.

The liquidation chapter of our general insurance law was copied almost verbatim from the New York law of 1909 (Consolidated Laws of New York 1909, chap. 28) and has been judicially construed by the courts of that State, as follows:

"The superintendent of insurance, since the enactment of section 63 of the insurance law, has been the official liquidator of all insurance companies. The purpose of this law was to provide for an economical liquidation of insolvent insurance companies through the agency of a State department, and to prevent the waste of assets which theretofore had been occasioned through receiverships." *In the Matter of Knickerbocker Life Ins. Co.,* 199 App. Div. 503 (191 N. Y. Supp. 780).

In the petition filed by the insurance commissioner alleging insolvency of defendant insurance company, we find the following:

"(c)    That in the event the court decides to appoint a receiver rather than a custodian, a permanent receiver be appointed of all the property and assets of every nature whatever [wherever] situated, held, owned or controlled by the defendant company, and of all books, papers, and accounts of the defendant company, with full power to take into his possession, hold, manage, and conduct the business of the defendant company with such powers as this court may from time to time grant, and otherwise with the usual powers of a receiver in like cases.
* * *

"(e)    That if hereafter it be found just and proper that the assets and property and the business of the defendant company be ordered to be sold, liquidated or reinsured in whole or in part in such manner and upon such terms and conditions as to this court shall seem just and equitable, such order of sale, liquidation or reinsurance shall make proper and suitable provision for the preservation of all equities, rights, priorities, claims and liens of creditors of the defendant company, and shall provide for the sale of the property of the defendant company subject to or free and clear from any and all liens and incumbrances in whole or in part in such manner and upon such terms as this court may direct, and that the proceeds of any such sale be distributed among those entitled thereto as this court shall adjudicate.

"(f)    That this court may make such order and direct such proceedings as may be just, proper and necessary to effect the winding up of the defendant company, and that upon the disposition of such property, assets and business, an order be made by this court dissolving the defendant corporation in accordance with and as provided by Act No. 327, § 65, Pub. Acts 1931."

An analysis of the petition filed in the instant cause discloses that the petition prays for custodianship under 3 Comp. Laws 1929, §§ 12264, 12265, but also prays for liquidation as is provided for under 3 Comp. Laws 1929, § 12266, on the ground that defendant corporation is insolvent.

Section 12270, 3 Comp. Laws 1929, reads in part as follows:

"In any case arising under this chapter the commissioner of insurance may file his petition for liquidation or receivership in the circuit court for the county of Ingham, and the preliminary steps towards the appointment of a receiver shall be taken and heard in such circuit, and the circuit court of Ingham county may at any time thereafter transfer such case to the circuit court for the county in which such company may have its principal place of business, for such further steps and action as may be necessary in the premises, as in cases of change of venue."

A careful analysis of the above section and other sections of the insurance code convinces us that it was the intention of the legislature to include in the term receiver or receivership both custodianship and liquidation; that the word "receivership" found in section 12270 should be construed to mean the 'custodial receivership' authorized in sections 12264 and 12265 and the term 'liquidation' should be interpreted as referring to the proceeding provided for in section 12266; and that the several sections of the statute provide alternative remedies which may be pursued in the same petition.

The decree of the trial court is affirmed. No costs will be allowed as the construction of a statute is involved.

Butzel, C. J., and Wiest, Bushnell, Chandler, North, and McAllister, JJ., concurred. Potter, J., did not sit.