VALT v WOODALL INDUSTRIES, INC

DECISION OF THE COURT

1. APPEAL AND ERROR—EQUALLY DIVIDED COURT.

Decision of the Court of Appeals reversing and remanding an award of workmen's compensation is affirmed by an equally divided court.

OPINION FOR REVERSAL

T. M. KAVANAGH, C. J., and SWAINSON, J.

2. WORKMEN'S COMPENSATION—WORKMEN'S COMPENSATION ACT—COMMENCEMENT OF COMPENSATION—CONSTRUCTION—LEGISLATIVE INTENT.

*The section of the Workmen's Compensation Act which controls the commencement of compensation should be read to grant an injured employee who was unable to return to work for ten days compensation for her first seven days of incapacity (MCLA 412.3).*

3. STATUTES—CONSTRUCTION—WORKMEN'S COMPENSATION ACT—LEGISLATIVE INTENT. .

*The Michigan Supreme Court must be especially mindful of the Legislature's purpose in adopting the Workmen's Compensation Act when it interprets the Act's meaning where it is possible to*

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 902.
[2, 6, 11, 13–15] 58 Am Jur, Workmen's Compensation § 318 *et seq.*
[3] 58 Am Jur, Workmen's Compensation § 26.
[4, 6] 58 Am Jur, Workmen's Compensation § 282 *et seq.*
[5] 50 Am Jur, Statutes § 44 *et seq.*
[7, 9, 10] 58 Am Jur, Workmen's Compensation § 284.
[8] 58 Am Jur, Workmen's Compensation § 31.
[12] 58 Am Jur, Workmen's Compensation §§ 2, 9.
[16] 58 Am Jur, Workmen's Compensation § 281 *et seq.*

construe the same words of the Act to reach different results (MCLA 411.1 et seq.).

4. WORKMEN'S COMPENSATION—WORKMEN'S COMPENSATION ACT—IN-CAPACITY—WAGES—COMMENCEMENT OF COMPENSATION—FIRST-WEEK COMPENSATION.

A section of the Workmen's Compensation Act should be read to define incapacity in terms of an employee's inability to earn his full wages, or more specifically his full average weekly wages; if his incapacity extends to the eighth day, the employee is entitled to compensation under the first sentence of the section and, since his incapacity will of necessity have continued into the second week, he becomes entitled to compensation for the first week's incapacity under the words of the second sentence of the section, this construction provides an employee with the measure of compensation for wages lost as a result of work related injury that is consistent with both the primary purpose of the Workmen's Compensation Act and the language of the section which controls the commencement of compensation (MCLA 412.3).

5. STATUTES—COMPOSITION—LEGISLATIVE FUNCTION—SUPREME COURT —REVIEW.

The composition of a statute is the legislative function and beyond the Michigan Supreme Court's scope of review.

6. WORKMEN'S COMPENSATION—INCAPACITY—DATE OF INJURY—COM-MENCEMENT OF COMPENSATION.

An employee will receive a compensation amount related directly to his wage loss due to incapacity with workmen's compensation being correctly paid from the date of injury commencing on the eighth day thereafter; he will not be tempted to prolong his absence from work to the fifteenth day so that he can recapture the first week's benefits.

7. WORKMEN'S COMPENSATION—WORKMEN'S COMPENSATION ACT— COMPUTATION OF COMPENSATION—WEEKLY BASIS.

A section of the Workmen's Compensation Act itself calls for a weekly compensation and makes no reference to a daily rate, therefore, whenever an employee is unable to work as a result of total disability for a fraction of a week, the employer must compensate at the full applicable weekly rate found in that section of the Act subject to the proviso in another section of the Act which reads in part that the weekly loss in wages shall consist of such percentage of the average weekly earnings computed to fairly represent the proportionate extent of the

*impairment of the injured · employee's earning capacity in which he was working at the time of the injury, fixed as of the time of injury, but determined in view of the nature and extent of the injury and that "[t]he compensation payable, when added to his wage earning capacity after the injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury" (MCLA 412.9, 412.11).*

8. STATUTES—CONSTRUCTION—ADMINISTRATIVE INTERPRETATION—SU-
PREME COURT—REVIEW.

*The past practice of the administrative agency charged with the interpretation of a statute is entitled to substantial weight in the Michigan Supreme Court's judicial review, but cannot alone support an improper interpretation of the statute, especially, when that interpretation has been expressly rejected by the administrative tribunal charged with the responsibility of reviewing the decisions of the administrative agency.*

OPINION FOR REVERSAL

WILLIAMS, J.

See headnotes 2–4.

9. WORKMEN'S COMPENSATION—EARNING CAPACITY—IMPAIRMENT—
COMPUTATION—STATUTES.

*A workmen's compensation claimant whose earning capacity was 100% impaired for 40% of a week suffered a proportionate impairment of earning capacity of 40% and therefore a weekly loss in wages of 40% of average weekly earnings; where the claimant's average weekly wage was $111.36, the weekly loss was 40% of that, $44.54, and compensation 66 2/3% of the weekly loss, $29.70, subject to the limitation that the sum of compensation and wage-earning capacity after injury shall not exceed average weekly earnings at the time of injury (MCLA 412.9, 412.11[1]).*

OPINION FOR AFFIRMANCE

LEVIN and M. S. COLEMAN, JJ.

10. WORKMEN'S COMPENSATION—WEEK—INJURY.

*A week is not completed until seven days have passed and the eighth day after an injury compensable under the Workmen's Compensation Act is a period of one week and one day; the second week after injury is not complete until fourteen days have passed (MCLA 412.3).*

11. WORKMEN'S COMPENSATION—WORKMEN'S COMPENSATION ACT—INCAPACITY—DATE OF INJURY—INJURY—COMMENCEMENT OF COMPENSATION.

*The two week period, in a section of the Workmen's Compensation Act which provides in part that "[i]f such incapacity continues for 2 weeks or longer \* \* \* compensation shall be computed from the date of injury", was intended to minimize human temptations to take off three or four extra and unnecessary days for a minor injury so that an employee could return to work on the eighth day and receive compensation for the entire week (MCLA 412.3).*

12. WORKMEN'S COMPENSATION—DISABILITY—DEATH—INJURY—DISEASE.

*The Workmen's Compensation Act was designed to provide compensation for disability or death resulting from occupational injuries or disease or accidental injury to or death of employees; the employee is being compensated for losses resulting from the injury.*

13. WORKMEN'S COMPENSATION—INCAPACITY—COMMENCEMENT OF COMPENSATION—INJURY—FIRST-WEEK COMPENSATION.

*An employee begins to receive workmen's compensation on the eighth day if the incapacity (whether partial or total) resulting from an injury extends for more than one week; if the incapacity (whether partial or total) resulting from the injury continues for two weeks or longer then the employee recaptures compensation for the first week (MCLA 412.3).*

14. WORKMEN'S COMPENSATION—INJURY—INCAPACITY—COMMENCEMENT OF COMPENSATION—FIRST-WEEK COMPENSATION.

*An employee's injury totally incapacitated her for work for a period of 10 calendar days, at the end of which time she returned to work; her incapacity did not continue for 2 weeks or longer, her incapacity extended 1 week and 3 days and, therefore, she should not recover workmen's compensation for the first week; the incapacity resulting from the injury must extend for 14 days or longer in order for the employee to recover compensation for the first week (MCLA 412.9[a], 412.3).*

15. WORKMEN'S COMPENSATION—STATUTES—WAGES—COMPUTATION OF COMPENSATION.

*The statutory objective of a section of the Workmen's Compensation Act is to compensate the employee in a manner which fairly reflects the extent of "the impairment of his earning capacity"; the following equation expresses the statutory objec-*

tive and insures that the employee receives compensation
proportionate to his or her lost wages:

$$\frac{Wages\ Lost}{Average\ weekly\ wage} = \frac{Compensation\ to\ be\ Paid}{Statutory\ maximum}$$

(MCLA 412.11).

16. WORKMEN'S COMPENSATION—MAXIMUM COMPENSATION—WAGES—
DATE OF INJURY.

*An employee may not be compensated in excess of the statutory
maximum of the Workmen's Compensation Act nor may the
compensation and post injury wage earning capacity exceed the
average weekly earnings at the time of the injury.*

Appeal from Court of Appeals, Division 3, Fitz-
gerald, P. J., and R. B. Burns and Holbrook, JJ.,
reversing and remanding Workmen's Compensa-
tion Appeal Board. Submitted September 4, 1973.
(No. 1 September Term 1973, Docket No. 54,045.)
Decided June 25, 1974. Rehearing denied August
2, 1974.

39 Mich App 199 affirmed by an equally divided
Court.

Claim by Sarah Valt against Woodall Industries,
Inc., and Associated Indemnity Corporation for
workmen's compensation. Award granted. Defend-
ants appealed to the Court of Appeals. Reversed
and remanded. Plaintiff appeals. Affirmed by an
equally divided Court.

*Miller, Klimist, Cohen, Martens & Sugerman,
P. C.,* for plaintiff.

*John E. Miley (E. R. Whinham, Jr.,* of counsel),
for defendants.

Amici Curiae:

Aetna Casualty & Surety Company, American
Insurance Association, American Mutual Insur-

ance Alliance, Auto-Owners Insurance Company, Citizens Mutual Automobile Insurance Company, Employers Mutual of Wausau, Liberty Mutual Insurance Company, Michigan Mutual Liability Company, and Michigan State Accident Fund, by *Charles H. King.*

Michigan Manufacturers Association, Michigan Road Builders' Association, Michigan Retailers' Association, National Electrical Contractors' Association—Michigan Chapter, Associated Petroleum Industries of Michigan, Michigan Automobile Dealers' Association, Michigan Chapter Associated General Contractors of America, Inc., Michigan Dairy Foods Association, Michigan Wine Institute, Michigan Automotive Wholesalers' Association, Michigan Trucking Association, Michigan Institute of Laundry and Drycleaning, and Michigan Food Dealers' Association, by *Beaumont, Smith & Harris* (by *Dwight H. Vincent, J. Walker Henry,* and *Paul A. DePrez).*

International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, by *Miller, Klimist, Cohen, Martens & Sugerman, P. C.*

Michigan State AFL-CIO, by *Rothe, Marston, Mazey, Sachs, O'Connell, Nunn & Fried, P. C.*

Michigan Self-Insurers Association, by *Robert D. Thompson.*

*McCroskey, Libner, Van Leuven, Kortering, Cochrane & Brock,* in behalf of plaintiff and similarly situated victims of industrial injuries.

SWAINSON, J. The facts in this case are not in

dispute.[1] Appellant Sarah Valt was injured in the course of her employment with appellee Woodall Industries, Inc. on Thursday, May 23, 1968. The injury to her hand, thumb and wrist, rendered her unable to return to work from Friday, May 24 until Monday, June 3 (a period of ten calendar days). At the time of her injury, appellant earned an average weekly salary of $111.36.

The employer and its insurance carrier voluntarily compensated appellant according to their interpretation of the Workmen's Compensation Act, Part II, § 3;[2] and Part II, § 9.[3] They treated the days from May 24, 1968 to May 30, 1968, inclusive as a "waiting week" and paid no compensation for these first seven days. For the remaining days of Friday, May 31 through Sunday, June 2, plaintiff was paid 1/6 of her weekly compensation rate found in MCLA 412.9; MSA 17.159, for each day, excluding Sunday, that she was unable to work. For her period of disability, plaintiff was paid a total of $21.33 or 2/6 of the then correct maximum weekly compensation rate of $64 for a person in appellant's earning and dependency status.

---

[1] The parties entered into the following stipulation of facts before the Bureau of Workmen's Compensation hearing referee:

"It is stipulated that the following are the operative facts in the case:

"Claimant received an injury arising out of and in the course of her employment with the Defendant on May 23, 1968. At the time of her injury, her average weekly wage was $111.36. Due to her injury, she did not and could not return to employment until June 3, 1968. The employer, through his *[sic]* insurance company, paid compensation benefits for the last two days of disability. Payment was based on a daily rate of $10.655 compensation computed through dividing the weekly rate of $64.00 by six. Thus, the Claimant received compensation in the amount of $21.33.

"It is stipulated that this case does not put into issue the right of the Claimant for any possible future benefits under the act."

[2] MCLA 412.3; MSA 17.153, now reenacted in MCLA 418.311; MSA 17.237 (311).

[3] MCLA 412.9; MSA 17.159, now in relevant part, MCLA 418.351; MSA 17.237 (351).

The employer filed the proper report with the Bureau of Workmen's Compensation, notifying the Bureau of plaintiff's injury and the payment of voluntary compensation in the amount of $21.33. Thereafter, as stated in the opinion of the Workmen's Compensation Appeal Board:

"This report did not appear to be in conformance with the opinion entered by the Attorney General on May 27, 1968, in answer to a question concerning the interpretation of Part II of the statute. [Workmen's Compensation Act] (Opinion No. 4612, Pg. 243 (1967–1968) Report of the Attorney General). The Director of the Bureau of Workmen's Compensation did, pursuant to the provision of Rule 5 of the Bureau, schedule the matter for hearing and assigned the matter to a referee for resolution."

In the proceedings before the hearing referee the parties immediately established their position on the two issues that are now before this Court for final resolution.

I. Is appellant-employee entitled to compensation for her first week of disability when she was absent from her place of employment, because of injuries, for a period of less than 14 calendar days?

II. Did appellee-employer compute the compensation that was paid according to a correct interpretation of the Workmen's Compensation Act?

To simplify our discussion we proceed now to consider, in the order stated, these issues.

I

The parties agree that appellant was totally incapacitated as understood under Part II, § 9 of the Workmen's Compensation Act for ten calendar days. The center of controversy in this first issue is the proper interpretation of Part II, § 3, which

controls the commencement of compensation. At
the time of appellant's injury, Part II, § 3 read:

"No compensation shall be paid under this act for
any injury which does not incapacitate the employee for
a period of at least 1 week from earning full wages, but
if incapacity extends beyond the period of 1 week,
compensation shall begin on the eighth day after the
injury. If such incapacity continues for 2 weeks or
longer or if death results from the injury, compensation
shall be computed from the date of the injury."[4]

Appellant Valt and the Workmen's Compensa-
tion Appeal Board interpret this section to entitle
appellant to compensation payments computed
from the date of injury. Appellant first cites *King*

_____

[4] Part II, § 3 has undergone a gradual reduction of waiting periods
since its original adoption in 1912. As enacted in 1912 PA (1st Ex
Sess) 10 the section read:

"No compensation shall be paid under this act for any injury which
does not incapacitate the employee for a period of at least two weeks
from earning full wages, but if incapacity extends beyond the period
of two weeks, compensation shall begin on the fifteenth day after the
injury: Provided, however, That if such disability continues for eight
weeks or longer, such compensation shall be computed from the date
of injury."

The section was next amended by 1919 PA 64 to read:

"No compensation shall be paid under this act for any injury which
does not incapacitate the employee for a period of at least one week
from earning full wages, but if incapacity extends beyond the period
of one week, compensation shall begin on the eighth day after the
injury: Provided, however, That if such incapacity continues for six
weeks or longer or if death results from the injury, compensation
shall be computed from the date of the injury."

The section remained in the same form and was modified by 1943 PA
245 to reduce the length of incapacity required to recapture the first
week's compensation from six weeks to four weeks. The next amend-
ment of the section was accomplished by 1965 PA 44. The amended
section is quoted above in the body of this opinion. At the present
time as a result of 1969 PA 317 the section has been slightly modified
to read:

"No compensation shall be paid under this act for any injury which
does not incapacitate the employee from earning full wages, for a
period of at least 1 week, but if incapacity extends beyond the period
of 1 week, compensation shall begin on the eighth day after the
injury. If incapacity continues for 2 weeks or longer or if death
results from the injury, compensation shall be computed from the
date of the injury."

*v Davidson,* 195 Mich 157, 159; 161 NW 841 (1917), in which this Court stated the proper guideline for construing the words of the Workmen's Compensation Act:

"In construing this act, its words are to be taken and construed in the sense in which they are understood in common language, taking into consideration the text and subject-matter relative to which they are employed."

Following the *King* guideline, appellant asserts that the first sentence of Part II, § 3, establishes a one-week waiting period as a condition precedent to eligibility for compensation. If during this one-week waiting period an employee is unable to earn "full wages" his right to benefit accrues and, if the incapacity from earning full wages continues beyond one week, compensation becomes payable on the eighth day after injury.

Since the Act speaks of incapacity from earning "full wages" rather than "any wages" appellant emphasizes that the injured employee is not required to forego *all* wages, only "full wages" to be eligible for compensation.

To read the first sentence of the section otherwise, appellant continues, would impart a "nugatory" meaning to the phrase "from earning full wages" and would both deviate from the ·"clear meaning" guideline and also violate another cardinal rule of construction which states that one provision of a statute should not be construed in such a manner as to render another provision of no effect. *Transamerican Freight Lines, Inc v Quimby,* 381 Mich 149; 160 NW2d 865 (1968). *Cf. Melia v Employment Security Commission,* 346 Mich 544; 78 NW2d 273 (1956).

The second sentence of the section makes com-

pensation payable from the date of injury when-
ever "such incapacity" continues for two weeks or
longer. Under appellant's construction "such inca-
pacity" relates back to the incapacity described in
the first sentence, namely, incapacity "from earn-
ing full wages". Therefore, if the employee has
been unable to earn his full wages for two weeks
due to a job related injury, " * * * he is not
required to forfeit compensation for the first week
of incapacity—he is entitled to compensation from
the date of injury, payments beginning on the
eighth day after injury". Applying this analysis to
the present facts, appellant argues that she was
unable to earn "full wages" during a period of two
weeks and should have been compensated for the
entire period of her incapacity including the first
week thereof.

Appellees support their refusal to pay benefits
for the first week of disability on the basis of prior
administrative interpretation of the Workmen's
Compensation Act. They direct our attention to
Rule 408.31 of the Workmen's Compensation Com-
mission[5] and argue that this rule reflects the 50
years of past practice under the Workmen's Com-
pensation Act. From appellees' account it appears
that the past practice under the Workmen's Com-
pensation Act has been to aggregate an employee's
days of disability to complete the waiting week. A
record is kept of all days, excluding Sundays, that

[5] "R 408.31 Rule 1. Reports.

"(1) An employer shall report immediately to the bureau on form
100 all injuries, including diseases, which arise out of and in the
course of the employment and result in:

"a. An aggregate of 7 or more days of disability not including
Sundays or the day of injury.

"b. Death.

"c. Specific losses.

"A copy of the report shall be given immediately to the injured
employee."

are lost due to incapacity. When the total number of days reaches eight, compensation is paid for the eighth day and for any further days of incapacity. Thereafter, if the aggregate period of disability totals 14 days the employee "recaptures" compensation for the waiting week.

A statutory construction argument supportive of appellees' position has been presented to us by amici curiae in this case. According to their analysis of Part II, § 3, the plain language of the section indicates that the proper meaning of incapacity is an "impairment" to perform the previous work which would earn the employee "full wages".[6]

The employee's impairment must extend beyond "a period of at least 1 week" for compensation to begin. The impairment must then continue—be maintained—for two weeks (14 days) or longer in order to recapture the first week's benefits.

To further support their interpretation, amici curiae cites the rule of construction found in *Melia v Employment Security Commission,* 346 Mich 544, 562; 78 NW2d 273 (1956):

" 'No rule is better settled than, in construing a statute, effect must be given to every part of it. One part must not be so construed as to render another part nugatory, or of no effect. The same rule applies to words, in construing a sentence.' "

With this principle as a guide amici curiae argues that theirs is the proper construction of the disputed section.

"We submit * * * it is clear from statutory construction that the statutory term 'continues for two weeks'

---

[6] The Court of Appeals interpreted "incapacity" in a similar manner. *See, Phipps v Campbell, Wyant & Cannon Foundry (Valt v Woodall Industries, Inc),* 39 Mich App 199, 217; 197 NW2d 297 (1972).

has to be of greater duration than 'extends beyond the period of 1 week.'

"With such a difference in language, it is not logical that the Legislature meant the two terms, as cited above, to be synonymous, as is argued by the claimant. It is not possible that disabling incapacity on the eighth day after injury would fulfill the requirements that the impairment of work activity 'continue for two weeks.' Clearly, the Legislature did not intend that such impairment on the eighth day after injury would fulfill the statutory requirement of incapacity 'for two weeks.' If this had been the intent, then there would not have been the necessity to incorporate the requirement of 'continues for two weeks.' * * * [H]ad the Legislature intended that there be but 1 statutory waiting period and that incapacity merely on the eighth day would entitle one to both initial and both retroactive compensation, it could have provided that:

" ' * * * If incapacity extends beyond the period of 1 week, compensation shall begin on the eighth day after the injury and thereupon be retroactive to the date of the injury.' " (Brief of Michigan Manufacturers Association, et al, Amici Curiae, pp 10–11.)

After the thorough examination of the arguments presented to us, we have concluded that Part II, § 3 of the Workmen's Compensation Act should be read to grant appellant compensation for her first seven days of incapacity. Both appellant and appellees have presented us with reasonable interpretations of Part II, § 3. In our opinion, however, appellant's position better reflects the primary purpose of the Workmen's Compensation Act which is to provide compensation for disability from an employment related injury or disease to individual employees working in the pursuits subject to the Act. *Wilson v Doehler-Jarvis Division of National Lead Co,* 358 Mich 510, 516; 100 NW2d 226 (1960); *Rookledge v Garwood,* 340 Mich 444, 452; 65 NW2d 785 (1954); 24 Michigan Law &

Practice, Workmen's Compensation, § 2. Where, as in this case, it is possible to construe the same words of the Act to reach different results we must be especially mindful of the Legislature's purpose in adopting the Act when we interpret its meaning. *Cf. Commissioner of Insurance v American Life Ins Co,* 290 Mich 33, 44–45; 287 NW 368 (1939); *Kizer v Livingston County Board of Commissioners,* 38 Mich App 239; 195 NW2d 884 (1972).

Accordingly, we read the words of Part II, § 3 to define incapacity in terms of an employee's inability to earn his full wages, or more specifically his full average weekly wages.[7] If his incapacity extends to the eighth day, the employee is entitled to compensation under the first sentence of the section; and, since his incapacity will of necessity have continued into the second week, he becomes entitled to compensation for the first week's incapacity under the words of the second sentence of the section. This construction, we believe, provides an employee with the measure of compensation for wages lost as a result of work related injury that is consistent with both the primary purpose of the Workmen's Compensation Act and the language of Part II, § 3.

Contrary to the argument of appellees such a construction of the section does not render its second sentence of no effect. It has always been the intention of the Legislature that the first week's benefits should be recaptured if incapacity extends a given length of time. See footnote 4, *supra.* If the second sentence of Part II, § 3 were not present an employee under either party's interpretation of the language of the first sentence,

---

[7] *See* Part II, § 11, now recodified in MCLA 418.371; MSA 17.237(371).

standing alone, would never be able to obtain compensation for his first week of incapacity. Perhaps the Legislature could have written the section in a more compact manner by changing a few words as suggested by amici curiae but it did not do so. The composition of a statute is the legislative function and beyond our scope of review.

On remand the Workmen's Compensation Appeal Board is instructed to reenter its order awarding appellate $64 compensation for the days May 24, 1968–May 30, 1968, inclusive.

Before concluding this portion of the opinion, we feel compelled to respond to a statement contained in the opinion of Justice COLEMAN. Justice COLEMAN argues that interpreting the Workmen's Compensation Act as we do in the present opinion will encourage an employee to "take off three or four extra and unnecessary days for a minor injury so that he could return to work on the eighth and receive compensation for the entire week." Such an argument is, in our opinion, unfounded in fact and uncompelling in logic. Even assuming *arguendo*, Justice COLEMAN's premise that an employee would feign continuing disability, there is no reason to conclude that our interpretation of the act will lead to more unnecessary work days lost than under her interpretation. Indeed, we believe that the interpretation of the act contained in the present opinion is more likely to induce an early return to work. With compensation being correctly paid from the date of injury commencing on the eighth day thereafter, an employee will receive a compensation amount related directly to his wage loss due to incapacity. He will not be tempted to prolong his absence from work to the fifteenth day so that he can recapture the first week's benefits. It is our belief that interpreting the act as we do herein will foster a just distribution of the cost of

injury and a speedy return of the injured em-
ployee to work.

## II

The problem presented in this second issue is to
determine the correct method for computing com-
pensation when the period of total disability is less
than a complete week (seven consecutive days).
When compensation is being computed for a com-
plete week of total disability, the parties agree
that the employee is entitled to 2/3 of his or her
average weekly wages subject to the maximum
and minimum amounts set forth in Part II, § 9.

Part II, § 9 controls, in general terms, the com-
pensation to be paid for total disability but does
not itself specify the proper method for computing
a fractional week's benefits. In relevant part the
statute stated:

"While the incapacity from work resulting from the
injury is total, the employer shall pay, or cause to be
paid as hereinafter provided, to the injured employee, a
weekly compensation of 66-2/3% of his average weekly
wages, but not more than * * * $64.00 * * * if such
injured employee has no dependents; * * * "

The appellees have steadfastly argued in the
proceedings below that administrative past prac-
tice and customs should be given great weight in
determining the proper computational method un-
der this statute.[8] In specific terms appellees would

---

[8] As an example of the administrative interpretation of the Work-
men's Compensation Act by the Bureau of Workmen's Compensation,
appellee cites two tables entitled "Daily Compensation Rate" first
published by the Bureau in 1966. According to these tables, which
were used in this case by appellee, an employee with a weekly
compensation rate of $64.00 would receive the following compensation
per day when based on a six-day week:

1 day—$10.67

have us conclude, as did the Court of Appeals at 39 Mich App 199, 217–218; 197 NW2d 297 (1972), that the weekly compensation amount listed in Part II, § 9 should be divided by the number of days in the employee's work week and the resulting daily rate multiplied by the number of work days lost due to total disability. Thus, in the present case, the employer divided the applicable compensation rate of $64.00 by six days[9] to obtain a daily rate of $10.66 which was then multiplied by the two work days plaintiff lost, to obtain a total compensation of $21.33.[10]

In contrast appellant has maintained throughout these proceedings that compensation must be computed on a weekly rather than a daily basis. According to her analysis, adopted by the hearing referee and the Workmen's Compensation Appeal Board, the statute itself calls for a weekly compensation and makes no reference to a daily rate. Therefore, whenever an employee is unable to work as a result of total disability for a fraction of a week, the employer must compensate at the full applicable weekly rate found in Part II, § 9 subject

---

2 days—$21.33
3 days—$32.00
4 days—$42.67
5 days—$53.33
Maximum weekly amount—$64.00

[9] Appellees state in their brief at pages 33–34:

" * * * [T]he payment of total disability benefits of less than a week on the basis of 1/6th of the appropriate rate for each day, except Sunday of disability is a practice of long-standing. It is evident from its long-standing that the practice began when the usual work week was six days."

From the point of view of our present analysis, we choose to disregard any distinction between applying a daily rate based upon a six-day week or a five-day week. The feature of appellees' method of computation that we must here examine is the practice of paying, in general terms, a daily rather than a weekly rate of compensation.

[10] *See* stipulation of facts, p 684, *supra*.

to the proviso of Part II, § 11[11] which reads in part:

"The weekly loss in wages referred to in this act shall consist of such percentage of the average weekly earnings of the injured employee computed according to the provisions of this section as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the injury, the same to be fixed as of the time of the injury, but to be determined in view of the nature and extent of the injury. *The compensation payable, when added to his wage earning capacity after the injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury.*" (Emphasis added.)

Applying appellant's method of computation to the present facts leads to the following result. Under Part II, § 9 she was entitled to compensation at the rate of $64 per week subject, however, to the proviso of Part II, § 11. Under that section appellant's actual earnings for the portion of the week (the remaining part of the seven-day period concluding on Thursday, June 6, 1968) that she was able to work, or $73.22, must be combined with the $64 to insure that appellant will not receive a total amount of compensation plus wages that exceeds her average weekly wage of $111.36. Here, the sum of the compensation and actual wages was $137.22 which did violate the proviso. Therefore, the $64 compensation must be reduced to an amount that when added to her earned wages will not exceed $111.36. Appellant claims she should have received compensation in the amount of $38.14.

In our opinion appellant's analysis presents the proper construction of these statutes. She correctly observes that all relevant portions of the Work-

[11] MCLA 412.11; MSA 17.161(1), now reenacted in MCLA 418.371; MSA 17.237(371).

men's Compensation Act speak in terms of weekly rather than daily compensation rates. Her analysis fits well with our belief that the Act should be construed so as to provide an injured employee the full measure of compensation appropriate under the plain language of the Act. The past practice of the administrative agency charged with the interpretation of a statute is entitled to substantial weight in our judicial review, *Magreta v Ambassador Steel Co,* 378 Mich 689; 148 NW2d 767 (1967), *reh,* 380 Mich 513; 158 NW2d 473 (1968), but cannot alone support an improper interpretation of the statute, especially, when that interpretation has been expressly rejected by the administrative tribunal charged with the responsibility of reviewing the decisions of the administrative agency.[12]

--------

[12] In the present case the Appeal Board concluded from reading the Act that:

"Many methods of paying an employee for his services are utilized by employers. Some employees are paid by the hour, some by the week, some by the month, some by the year, and others are even paid by the amounts produced or sold. Obviously, the Legislature could not enact a reasonably simple statute which would permit a means of weighing the wage loss occurring because of the injury and then fairly compensate for this wage loss without somehow converting all these different methods of payment for services rendered to some kind of a standard for the purpose of determining the loss occasioned by injury and compensating therefor.

"The Workmen's Compensation Act simply makes too many references to a weekly loss and a weekly payment to believe that the Legislature intended the use of any standard other than that of a weekly basis in ascertaining the loss and the payment of compensation therefor. Throughout Part II which provides the method of payment of compensation the exclusive standard referred to is a weekly computation. The wages earned at the time of injury is by statutory enactment in Section 11, Part II, converted to a weekly wage. Furthermore, Section 11, Part II provides that, 'The weekly loss in wages * * * shall consist of such percentage of the average weekly earnings * * * as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of injury, * * * ' This enactment which provides the method of determining the compensable loss permits no standard other than that of the weekly basis for determining the loss." *Valt v Woodall Industries, Inc,* 1970 WCABO 1337, 1340. *See also, Lundmark v J A Fredman, Inc and Liberty Mutual Insurance Co,* 1967 WCABO 534.

Therefore, we hold that for a period of total disability less than a full week, Part II, § 9, requires compensation to be paid on a weekly basis subject to the maximums and minimums contained therein and also subject to Part II, § 11.[13]

The Court of Appeals is reversed and the case is remanded to the Workmen's Compensation Appeal Board for the entry of an order not inconsistent with this decision.

T. M. KAVANAGH, C. J., concurred with SWAINSON, J,

WILLIAMS, J. *(for reversal).* My Brother SWAINSON has ably interpreted Part II, § 3 as to when compensation is first payable and when the employee becomes liable to compensation for the first week of incapacity. I concur completely in that part of his opinion.

However, I interpret the method of compensation differently. The pertinent statutory language is:

"While the incapacity for work resulting from the injury is total, the employer shall pay, or cause to be paid as hereinafter provided, to the injured employee, a weekly compensation of 66-2/3% of his average weekly wages, but not more than * * * $64.00 * * * if such injured employee has no dependents; * * * ." Part II, § 9.

"The weekly loss in wages referred to in this act shall consist of such percentage of the average weekly earn-

---

[13] Although a question has been raised in these proceedings regarding the applicability of Part II, § 11 to Part II, § 9, we find that the issue has been resolved in prior cases. *MacDonald v Great Lakes Steel Corp,* 268 Mich 591; 256 NW 558 (1934), clearly holds that the sections should be jointly applied to determine an employer's compensation payment to an injured employee. *Compare also, Halas v Yale Rubber Manufacturing Co,* 381 Mich 542; 164 NW2d 15 (1969) and *Liesinger v Owen-Ames-Kimball Co,* 377 Mich 158; 139 NW2d 706 (1966).

ings of the injured employee computed according to the provisions of this section as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the injury, the same to be fixed as of the time of the injury, but to be determined in view of the nature and extent of the injury. The compensation payable, when added to his wage earning capacity after the injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury." Part II, § 11(1).

Whatever difficulty there is in interpretation is in the Part II, § 11(1) language. However, it seems fairly straightforward.

"The weekly loss in wages" it says "shall consist of such percentage of the average weekly earnings * * * as shall fairly represent the proportionate extent of the impairment of his earning capacity * * * ." Obviously, if the employee's "earning capacity" was 100% impaired for 100% of the week, "the proportionate extent of the impairment of his earning capacity" would be 100% and "[t]he weekly loss in wages * * * [would] consist of [100%] of the average weekly earnings".

In this case the employee's "earning capacity" was 100% impaired for 40% of the week (assuming she worked a 5 day week). "[T]he proportionate extent of the impairment of [her] earning capacity" was 40% and "[t]he weekly loss in wages * * * [would] consist of [40%] of the average weekly earnings."

Having determined this, the next step is to apply the compensation formula of Part II, § 9, which is compensation at 66-2/3% of average weekly wages but not more than $64 if there are no dependents. The employee's average weekly wage is $111.36. 40% of that is $44.54, and 66-2/3% of that is $29.70. The wages actually earned

during the week were $73.22. The total of $29.70 and $73.22, or $102.92, do not exceed the limitation clause "shall not exceed his average weekly earnings" (Part II, § 11[1]) of $111.36. Therefore, the claimant is entitled to $29.70.

The Court of Appeals is reversed and the case is remanded to the Workmen's Compensation Appeal Board for entry of an order not inconsistent with this decision.

M. S. COLEMAN, J. *(to affirm)*. As a result of her injury, the plaintiff employee did not work for a period of ten calendar days. The employer voluntarily paid compensation for two days. The employee claims that she is entitled to compensation for the first week of disability.

The applicable statute was MCLA 412.3; MSA 17.153:

"No compensation shall be paid under this act for any injury which does not incapacitate the employee for a period of at least 1 week from earning full wages, but if incapacity extends beyond the period of 1 week, compensation shall begin on the eighth day after the injury. If such incapacity continues for 2 weeks or longer or if death results from the injury, compensation shall be computed from the date of the injury."

This section is now found at MCLA 418.311; MSA 17.237(311).

## HISTORY

When enacted in 1912, the statute included a similar provision except the periods were two and eight weeks and payment began on the fifteenth day. A bulletin issued that same year by the Industrial Accident Board reads:

"The distinguishing feature of the compensation law is that it provides benefits for every injury regardless of fault or negligence. The Michigan law pays the injured employes, beginning the third week of the disability, 50 per cent of his earnings during such disability. The employe therefore, in reality bears part of the cost of such compensation, because under the common law, if any recovery was had, his damages were assessed on the basis of 100% of his earnings. He also contributes in the sense that he gets no compensation for the first two weeks of his disability unless incapacity should extend eight weeks, in which event payment reverts to first day of injury."

A Bulletin No. 3 issued by the Board in 1913 contained the following fact situation and ruling:

"The employe was totally incapacitated for fourteen days and returned to work on the fifteenth day at a reduction of wages. He has received 50% of his loss in salary for six weeks and the question that arises is, should he receive compensation for the first two weeks, and if so, how much?

"It is the opinion of the Industrial Accident Board that inasmuch as the incapacity resulting from the accident (part being total and rest partial disability) continued for more than eight weeks, as it did under your statement, the employe would be entitled to compensation for the first two weeks under Section 3 of Part II of the Act. Inasmuch as the disability for the first two weeks was total, it is the opinion of the Board that for said first two weeks he should receive compensation for total disability."

The plain inference is that if the incapacity resulting from the injury did not continue for more than eight weeks, recovery for the first two weeks would not have been allowed.

A pamphlet issued in 1917 said that if an employee "is disabled for eight (8) weeks, he then gets the first two weeks compensation".

The act was amended in 1919 to reduce the waiting period to one week and the recovery period to six weeks. The above interpretations were not altered. (See rules issued August 14, 1919 and June 1, 1923.) The recovery period was reduced to four weeks in 1943 and the present two weeks in 1965.

## DISCUSSION

### I

The employee maintains the recovery requirements are met if the injury incapacitates her from earning full wages at any time during the second week. Because a week is seven days, the eighth day after the injury would be the first day of the second week. This interpretation would afford the employee the simultaneous rights to begin receiving compensation and to recover compensation for the first seven days.

Why then did not the Legislature say that if incapacity extends to the eighth day after injury, compensation should be computed from the date of injury? Because this is not what was intended. The facts are simple. A week is not completed until seven days have passed. The eighth day after injury is a period of one week and one day. The second week after injury is not completed until fourteen days have passed.

Plaintiff argues that "incapacity" means inability to earn full wages at some point during these statutory periods.

Under the interpretation of the statute proferred by Justice SWAINSON, an employee could take off three or four extra and unnecessary days for a minor injury so that he could return to work on the eighth and receive compensation for the entire

week. The two week period was intended to mini-
mize such human temptations.[1] Further, the act
was designed to provide compensation "for the
disability or death resulting from occupational
injuries or disease or accidental injury to or death
of employees". The employee is being compensated
for losses resulting from the injury.

If the incapacity (whether partial or total) re-
sulting from the injury extends for more than one
week, the employee begins to receive compensation
on the eighth day. If the incapacity (whether
partial or total) resulting from the injury "contin-
ues for 2 weeks or longer", then the employee
recaptures compensation for the first week.

## *CONCLUSION*

This is a case which "lawyers love and laymen
despair". The employee has sought compensation
under the provisions of MCLA 412.9(a); MSA
17.159(a) for losses due to a total incapacity for
work. The facts show that the employee's injury
totally incapacitated her for a period of ten calen-
dar days, at the end of which time she returned to
work. Her incapacity did not continue "for 2 weeks
or longer". Her incapacity extended one week and
three days and, therefore, she should not recover
for the first week.

This result is the one which most logically fol-
lows from the statutory language. The first sen-
tence of MCLA 412.3 establishes a one week wait-
ing period following the injury.[2] The employee does

---

[1] *See* 58 Am Jur, Workmen's Compensation, § 319 saying the pur-
pose of such waiting periods "is to prevent malingering."

[2] *See* Siegel, "Enactment of the Workmen's Compensation Law in
Michigan," *Conference * * * 50th Anniversary of Workmen's Com-
pensation in Michigan* (1962); 3 Larson, *Workmen's Compensation,*
appendix B, table 12; 58 Am Jur, Workmen's Compensation § 319; 81
ALR 1261; 11 Schneider, *Workmen's Compensation* § 2320. The latter

not become eligible to receive compensation until "the eighth day after the injury". If the incapacity (partial or total) resulting from the injury "continues for 2 weeks or longer", the second sentence permits recovery of compensation for the first week. A week being seven days, the incapacity resulting from the injury must extend for fourteen days or longer in order for the employee to recover compensation for the first week.

From its inception and continuing over 60 years, the legal interpretation of the statutory periods has been based upon the well-known fact that a week is composed of seven days. In short, this method of calculation has been historically well settled and all industry and insurers geared to it.

## II

Throughout these proceedings the parties have advanced alternative methods of computing compensation. We believe that neither method accords with statutory objectives.

MCLA 412.11; MSA 17.161 says, in part, that the employee's weekly loss in wages

"shall consist of such percentage of the average weekly earnings of the injured employee computed according to the provisions of this section as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the injury, the same to be fixed as of the time of the injury, but to be determined in view of the nature and extent of the injury. The compensation payable, when added to his wage earning capacity after the injury in the same or another employment, shall

author says: "Virtually all of the acts have a waiting period of from 3 to 15 days, during which time no compensation is payable unless the disability from injury continues for a stated minimum number of days or weeks."

not exceed his average weekly earnings at the time of such injury."

The statutory objective is to compensate the employee in a manner which fairly reflects the extent of "the impairment of his earning capacity".

Plaintiff contends that she is entitled to the statutory maximum if she misses but one day of work provided that compensation and wages earned do not exceed her average weekly earnings. This does not provide proportionate compensation. Defendant would divide the statutory maximum into six parts and award one part for each day of work missed. However, not all employees are on a six day work week. To adopt this method would result in possible under compensation for employees on a four or five day week.

We believe the following equation expresses the statutory objective:

$$\frac{\text{Wages Lost}}{\text{Average weekly wage}} = \frac{\text{Compensation to be Paid}}{\text{Statutory maximum}}$$

In the instant case, using the agreed figures, the equation would appear:

$$\frac{\$38.14}{\$111.36} = \frac{\text{Compensation to be Paid}}{\$64.00}$$

The compensation to be paid would be $21.92.

The equation insures that the employee receives compensation proportionate to his or her lost wages. The employee may not be compensated in excess of the statutory maximum nor may the compensation and post injury wage earning capacity exceed the average weekly earnings at the time of the injury.

As herein modified, the opinion of the Court of Appeals is affirmed.

LEVIN, J., concurred with M. S. COLEMAN, J.

T. G. KAVANAGH, J., concurred in the result of the opinion by M. S. COLEMAN, J.

J. W. FITZGERALD, J., did not sit in this case.